# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ISAIAS G. RAMOS-RAMIREZ,<br><br>Appellant. | No.  50911-3-II<br><br><br><br>UNPUBLISHED OPINION |

JOHANSON, J.  —  Isaias Ramos-Ramirez appeals his first degree child molestation, indecent liberties, and second degree incest convictions, sentences, and discretionary legal financial obligations (LFOs).  He argues that (1) defense counsel provided ineffective assistance, (2) the trial court erred when it imposed discretionary LFOs without an adequate inquiry, and (3) the trial court erred when it imposed certain community custody conditions.

We hold that defense counsel provided effective assistance of counsel, therefore we affirm the convictions.  However, the trial court conducted an inadequate inquiry into Ramos-Ramirez's ability to pay discretionary LFOs.  Regarding the community custody condition prohibiting Ramos-Ramirez from "loiter[ing] in []or frequent[ing] places where children congregate," we hold it is not unconstitutionally vague.  Clerk's Papers (CP) at 22.  In addition, we accept the State's concessions that the court erred when it imposed a community custody condition allowing a community custody officer (CCO) to direct plethysmograph testing and a community custody

condition regarding a curfew that was not crime related. We affirm Ramos-Ramirez's conviction, reverse the sentence, and remand to strike the improper conditions and for a proper inquiry into Ramos-Ramirez's ability to pay LFOs.

FACTS

I. BACKGROUND FACTS

Ramos-Ramirez is related to SPR.[1] SPR was less than 12 years old at the time of the relevant events. On March 10, 2017, Ramos-Ramirez kissed and hugged SPR at the edge of a grocery store parking lot while SPR stood between Ramos-Ramirez's legs. Ramos-Ramirez's hands "cupped" and "caressed" SPR's buttocks. Ramos-Ramirez put his tongue in SPR's mouth and licked his neck. At the same time, Ramos-Ramirez's body thrusted into SPR in an up-and-down motion. SPR tried to pull away, but Ramos-Ramirez forced SPR to kiss him and stand close.

During a routine patrol, City of Shelton Police Officer Hector Diaz observed Ramos-Ramirez "kissing" and "heavily making out with" SPR. Verbatim Report of Proceedings (VRP) at 71. Officer Diaz aimed a light at Ramos-Ramirez and tried to get his attention, but Ramos-Ramirez did not notice and was not paying attention. Officer Diaz approached on foot and separated Ramos-Ramirez from SPR. As Officer Diaz approached, he heard Ramos-Ramirez tell SPR "[d]on't talk." VRP at 76. The side of SPR's "face was wet with saliva. His whole mouth and nose area, the side of his ear was just wet with saliva." VRP at 76. Ramos-Ramirez's zipper was down, exposing his underwear.

---

[1] We use minor victims' initials to protect their privacy. Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), *available at* http://www.courts.wa.gov/appellate_trial_courts/.

Ramos-Ramirez was intoxicated. Officer Diaz observed an empty or almost empty bottle of vodka nearby and "the strong odor of . . . intoxicants was coming off from his person." VRP at 81. Every time Ramos-Ramirez spoke, he smelled like alcohol. Because Ramos-Ramirez "was really intoxicated," he was "difficult to understand." VRP at 124. Initially, Ramos-Ramirez was uncooperative and refused to provide his name or date of birth, but then he provided identification cards to law enforcement. Officer Diaz determined that SPR and Ramos-Ramirez were related.

The State charged Ramos-Ramirez with first degree child molestation, indecent liberties, and second degree incest.

## II. TRIAL

The case proceeded to jury trial. Various witnesses testified to the above facts. The defendant presented no witnesses.

In closing argument, defense counsel asserted that Ramos-Ramirez touched SPR in an offensive manner, but not in a sexual manner. Counsel argued that because all three charged crimes required proof of sexual contact and no sexual contact occurred, the jury should find Ramos-Ramirez not guilty. According to his counsel, Ramos-Ramirez may have committed an assault, but none of the sex offenses with which he was charged. Defense counsel argued,

> His zipper was down. He was drunk. Maybe peed beforehand and he didn't pull his zipper up. You have no evidence of sexual gratification. There was no testimony that Mr. [Ramos-]Ramirez had an erection. There was no testimony that he ejaculated. There's no testimony that he was trying to masturbate while this was going on. So there was no sexual contact, no sexual gratification.

VRP at 169-70.

3

### III. CONVICTION AND SENTENCE

The jury convicted Ramos-Ramirez of first degree child molestation, indecent liberties, and second degree incest and returned a special verdict for count 2 (indecent liberties) that the sexual contact was caused by forcible compulsion.

The sentencing court imposed concurrent high-end indeterminate standard range sentences of 89 months to life and lifetime community custody. Before imposing LFOs, the sentencing court asked defense counsel about Ramos-Ramirez's "ability to work." VRP at 191. Defense counsel stated that Ramos-Ramirez had worked as a brush picker, and counsel did not know Ramos-Ramirez's potential for employment after his release but he would likely be deported. The sentencing court found that Ramos-Ramirez was "able to work" and imposed sheriff's fees of $241.50, $600 for court-appointed counsel, $283.50 for the cost of a defense investigator, a jury demand of $250, and witness fees of $70.16.

The sentencing court imposed the following relevant community custody conditions:

4. The defendant shall abide by a nightly curfew if established by the CCO;
. . . .
15. The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, and shopping malls;
. . . .
17. The defendant shall undergo periodic polygraph and/or plethysmograph testing to measure treatment progress and compliance at a frequency determined by his/her treatment provider and/or his/her [CCO].

CP at 21-22.

### ANALYSIS

#### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Ramos-Ramirez argues that defense counsel was ineffective for failing to request a voluntary intoxication jury instruction. We disagree.

4

### A. PRINCIPLES OF LAW

A claim that counsel was ineffective is a mixed question of law and fact that we review de novo. *State v. Linville*, ___ Wn.2d ___, 423 P.3d 842, 844 (2018). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court set forth a two-prong inquiry for reversal of a criminal conviction based on ineffective assistance of counsel. 466 U.S. at 687. Under the *Strickland* test, the defendant bears the burden to show (1) "counsel's performance was deficient" and (2) the attorney's "deficient performance prejudiced the defense." 466 U.S. at 687. Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Strickland*, 466 U.S. at 700.

The "defendant bears the burden of establishing deficient performance," and we presume "that counsel's performance was reasonable." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "[P]erformance is deficient if it falls 'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). Counsel's conduct is not deficient when it "'can be characterized as legitimate trial strategy or tactics.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).

### B. DEFICIENT PERFORMANCE

To support that counsel was deficient, Ramos-Ramirez cites *State v. Kruger*.[2] In *Kruger*, Division Three of this court determined counsel was deficient because there was substantial evidence that the defendant was intoxicated and the defense theory focused on the absence of the

---

[2] 116 Wn. App. 685, 67 P.3d 1147 (2003).

requisite intent to commit assault. 116 Wn. App. at 693-94. Under these circumstances, the court stated, "[W]e do not see how the failure to request this instruction would fit strategically or tactically in this case. Every witness testified to Mr. Kruger's level of intoxication. No one downplayed or hid Mr. Kruger's level of intoxication." *Kruger*, 116 Wn. App. at 693.

But unlike in *Kruger*, the defense theory here was that Ramos-Ramirez may have committed an assault, but that he did not commit the offenses charged. In closing argument, defense counsel asserted that Ramos-Ramirez touched SPR in an offensive manner, but not in a sexual manner. Counsel argued that because all three charged crimes required proof of sexual contact and no sexual contact occurred, the jury should find Ramos-Ramirez not guilty. Considering defense counsel's theory of the case, Ramos-Ramirez has failed to show that there was no strategic reason to not request the intoxication instruction. *Grier*, 171 Wn.2d at 33. Accordingly, Ramos-Ramirez's ineffective assistance of counsel claim fails.

As such, we affirm his convictions.

## II. LFOs

Ramos-Ramirez argues that the trial court erred by ordering him to pay discretionary LFOs without first conducting a sufficient individualized inquiry into his ability to pay. The State asserts that Ramos-Ramirez's LFO argument is waived because he failed to preserve his objection.

In general, the failure to raise an issue before a superior court waives the issue on appeal under RAP 2.5(a). However, we interpret the rules of appellate procedure liberally "to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a). We exercise our discretion to reach the discretionary LFO issue and conclude that the trial court erred when it failed to conduct a sufficient individualized inquiry before imposing discretionary LFOs.

## A. Principles of Law

De novo review applies to the determination of whether the sentencing court failed to make an adequate inquiry under *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). *State v. Ramirez*, No. 95249-3, 2018 WL 4499761 (Wash. Sept. 20, 2018). Former RCW 10.01.160(3) (2015) requires the trial court to conduct an "individualized inquiry" on the record concerning a "defendant's current and future ability to pay before . . . impos[ing discretionary] LFOs." *Blazina*, 182 Wn.2d at 839. "[T]he court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Blazina*, 182 Wn.2d at 838. As part of this inquiry, the trial court is required "to consider important factors, such as incarceration and the defendant's other debts, when determining a defendant's ability to pay." *Blazina*, 182 Wn.2d at 839. Additionally, courts must look for additional guidance in the comment to court rule GR 34, which "lists ways that a person may prove indigent status" for the purpose of seeking a waiver of filing fees and surcharges. *Blazina*, 182 Wn.2d at 838; *City of Richland v. Wakefield*, 186 Wn.2d 596, 606-07, 380 P.3d 459 (2016). "[I]f someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." *Blazina*, 182 Wn.2d at 839.

## B. Sentencing Court Erred

Here, before imposing discretionary LFOs, the sentencing court asked about Ramos-Ramirez's "ability to work." VRP at 191. Defense counsel stated that Ramos-Ramirez had been a brush picker before his arrest and that Ramos-Ramirez would likely be deported after his release. Without further inquiry, the sentencing court imposed discretionary LFOs, including sheriff's fees of $241.50, $600 for court-appointed counsel, $283.50 for the cost of a defense investigator, a jury demand of $250, and witness fees of $70.16. The court did not take into account Ramos-Ramirez's

financial resources, the nature of the burden that the LFOs would impose, Ramos-Ramirez's indigency status under GR 34, the duration of his incarceration, nor his other debts. *Blazina*, 182 Wn.2d at 838-39. As such, the trial court's limited inquiry was insufficient to satisfy the inquiry required under *Blazina* and *Ramirez*.

We reverse the imposition of discretionary LFOs and remand for a sufficient inquiry into Ramos-Ramirez's ability to pay.

### III. COMMUNITY CUSTODY CONDITIONS

### A. VAGUENESS CHALLENGE

In a single-paragraph argument, Ramos-Ramirez asserts that the community custody condition prohibiting Ramos-Ramirez from loitering or frequenting places where children congregate is unconstitutionally vague. We disagree.

### 1. PRINCIPLES OF LAW

We review community custody conditions for abuse of discretion and reverse them only if they are "'manifestly unreasonable.'" *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010) (quoting *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)). Imposing an unconstitutional condition will always be "manifestly unreasonable." *Sanchez Valencia*, 169 Wn.2d at 792. We do not presume that community custody conditions are constitutional. *Sanchez Valencia*, 169 Wn.2d at 793.

Community custody conditions are unconstitutionally vague and violate due process when they (1) fail to provide ordinary people fair warning of the proscribed conduct and (2) fail to provide standards that are definite enough to "'protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

However, "'a community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018) (internal quotation marks omitted) (quoting *Sanchez Valencia*, 169 Wn.2d at 793).

2.    CONDITION NOT VAGUE

Here, the sentencing court imposed a community custody condition that stated, "The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, and shopping malls." CP at 22. Ramos-Ramirez asserts that the community custody condition is void for vagueness and without argument relies on *State v. Norris*, 1 Wn. App. 2d 87, 404 P.3d 83 (2017), *aff'd in part and rev'd in part by State v. Nguyen*, ___ Wn.2d ____, 425 P.3d 847 (2018), and *State v. Irwin*, 191 Wn. App. 644, 364 P.3d 830 (2015). These cases are distinguishable because the wording in the conditions at issue in each case failed to provide an illustrative list of prohibited locations, which rendered the conditions void for vagueness. *Irwin*, 191 Wn. App. at 655 ("Without some clarifying language or an illustrative list of prohibited locations . . . the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'" (quoting *Bahl*, 164 Wn.2d at 753)); *Norris*, 1 Wn. App. 2d at 95-96 (accepting the State's concession that a condition prohibiting the defendant "from entering 'any places where minors congregate'" was unconstitutionally vague).

In contrast, the condition imposed on Ramos-Ramirez provides an illustrative list of examples of prohibited locations, identifying "parks, video arcades, and shopping malls" as examples. CP at 22. As such, the provision includes an illustrative list of prohibited locations, which means it is not unconstitutionally vague under *Irwin* and *Norris*. *Irwin*, 191 Wn. App. at

655; *Norris*, 1 Wn. App. 2d at 95-96. The sentencing court did not err when it imposed the condition. *See Bahl*, 164 Wn.2d at 752-53; *Irwin*, 191 Wn. App. at 655.

## B. PLETHYSMOGRAPH COMMUNITY CUSTODY CONDITION

Ramos-Ramirez argues, and the State concedes, that the sentencing court erred when it imposed a community custody condition allowing a CCO to order plethysmograph testing as a monitoring tool. We accept the State's concession.

Trial courts are authorized to impose community custody conditions that monitor compliance with treatment. *State v. Riles*, 135 Wn.2d 326, 342-43, 957 P.2d 655 (1998), *abrogated on other grounds by Sanchez Valencia*, 169 Wn.2d 782. However, "plethysmograph testing does not serve a monitoring purpose," *Riles*, 135 Wn.2d at 345, and such testing implicates a defendant's due process "right to be free from bodily intrusions," *State v. Land*, 172 Wn. App. 593, 605, 295 P.3d 782 (2013). "Plethysmograph testing is extremely intrusive" and "can properly be ordered incident to crime-related treatment by a qualified provider. But it may not be viewed as a routine monitoring tool subject only to the discretion of a [CCO]." *Land*, 172 Wn. App. at 605 (citation omitted).

Here, the sentencing court imposed a community custody condition that authorized "periodic polygraph and/or plethysmograph testing to measure treatment progress *and compliance* at a frequency determined by his/her treatment provider *and/or his/her [CCO]*." CP 22 (emphasis added). To the extent this condition allows the CCO to direct plethysmograph testing as a monitoring tool, the condition violates Ramos-Ramirez's due process rights. *Land*, 172 Wn. App. at 605. As such, we accept the State's concession and reverse and remand to strike the improper

portions of the community custody condition from the judgment and sentence. *Land*, 172 Wn. App. at 605.

## C. CURFEW COMMUNITY CUSTODY CONDITION

Ramos-Ramirez argues, and the State concedes, that the sentencing court erred when it imposed a community custody condition allowing a CCO to set a curfew for Ramos-Ramirez because the condition is not a crime-related restriction. We accept the State's concession.

### 1. PRINCIPLES OF LAW

"We review community custody conditions for an abuse of discretion and will reverse them if they are manifestly unreasonable." *Nguyen*, 425 P.3d at 851. "A court does not abuse its discretion if a 'reasonable relationship' between the crime of conviction and the community custody condition exists." *Nguyen*, 425 P.3d at 853 (quoting *Irwin*, 191 Wn. App. at 658-59). As such, crime-related community custody "conditions are usually upheld if reasonably crime related." *Nguyen*, 425 P.3d at 853.

Under RCW 9.94A.703(3)(f), the trial court may require an offender to "[c]omply with any crime-related prohibitions." A "'[c]rime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). The sentencing court may also order an offender to "[p]articipate in rehabilitative programs or [] perform affirmative conduct reasonably related to the circumstances of the offense." RCW 9.94A.703(3)(d).

### 2. CURFEW NOT CRIME RELATED

Here, the trial court imposed a condition that stated, "The defendant shall abide by a nightly curfew if established by the CCO." CP at 21. This condition must be stricken because it is not related to the defendant's first degree child molestation and second degree incest crimes. The alleged acts of

11

first degree child molestation and second degree incest did not occur at night. In addition, there is no evidence that Ramos-Ramirez would have been prevented from committing his crimes if he had been confined at night. Because a curfew does not directly relate to the circumstances of the crimes, the condition is improper. *Nguyen*, 425 P.3d at 853. As such, we accept the State's concession and reverse the curfew community custody condition.

CONCLUSION

We affirm Ramos-Ramirez's convictions, reverse the sentence, and remand to strike the improper conditions and for a proper inquiry into Ramos-Ramirez's ability to pay LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

I concur:

MELNICK, J.

No. 50911-3-II

WORSWICK, J. (concur in part and dissent in part) — I agree with the majority decision in most respects. I write separately because I believe that the community custody condition providing, "The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, and shopping malls," is unconstitutionally vague. Clerk's Papers at 22. And although I appreciate that an illustrative list can clarify an otherwise vague condition, *see State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008), the list here adds confusion, rather than clarity to the condition. For the reasons cited in *State v. Wallmuller*, ___ Wn.2d ___, 423 P.3d 282, 285 (2018), I would hold that the community custody condition is vague.

_____
Worswick, J.