

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 1 3 2018
Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Sept 13, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 94883-6 |
| Respondent, | ) ) | (consol. w/95274-4) |
| v. | ) | |
| HAI MINH NGUYEN, | ) | |
| Petitioner. | ) | |
| STATE OF WASHINGTON | ) | En Banc |
| Respondent, | ) | |
| v. | ) | |
| DOMINIQUE DEBRA NORRIS, | ) | |
| Petitioner. | ) | Filed  SEP 1 3 2018 |

MADSEN, J.—These consolidated cases concern whether certain community custody conditions imposed by sentencing courts were sufficiently crime related or unconstitutionally vague. Each case involves a defendant who was convicted of sexually assaulting a minor.

For Hai Minh Nguyen, the sentencing court imposed a condition prohibiting the defendant from possessing or viewing "sexually explicit material." We hold that this condition is not unconstitutionally vague and is crime related.

For Dominique Debra Norris, the sentencing court imposed conditions requiring the defendant to inform the community corrections officer of any "dating relationship" and prohibiting the defendant from entering any "sex-related business." We hold that the condition requiring the defendant to disclose any "dating relationship" is not unconstitutionally vague. We also hold that the condition prohibiting the defendant from entering any "sex-related business" is crime related.

## FACTS

### *State v. Hai Minh Nguyen*

In 2015, Nguyen was convicted of first degree child molestation, first degree child rape, second degree child molestation, and second degree child rape.

His victim, T.P., was born in 1999 and lived in South Seattle with her parents and younger sister. T.P.'s parents rented one of the bedrooms in their house to Nguyen. T.P. spent a considerable amount of time with Nguyen, as he would come home from work around the same time that she came home from school. They grew quite close—T.P. referred to Nguyen as "uncle," and Nguyen would let T.P. use his computer for her leisure.

Nguyen began sexually assaulting T.P. when she was 6 years old. Nguyen put his hand under T.P.'s shirt and began massaging her breasts. Around this time, Nguyen

2

began putting his mouth on T.P.'s breasts and also bit her chest. By the time T.P. was 8 or 9 years old, Nguyen's activity escalated. Nguyen began penetrating T.P.'s vagina with his fingers on a near weekly basis and also began engaging in oral sex. By the time T.P. was 11 years old, Nguyen had penetrated her vagina with his penis. The last time Nguyen sexually assaulted her, T.P. was 13 years old, and Nguyen put his mouth on her vagina.

Initially, T.P. did not tell her parents about the sexual assault because she felt uncomfortable discussing it. T.P eventually wrote a note to her mother, disclosing that Nguyen had touched her. 3 Verbatim Report of Proceedings (Oct. 22, 2015) at 173. T.P. also told her therapist about Nguyen, and the police subsequently became involved.

The trial court sentenced Nguyen to a prison term of 279 months to life, with lifetime community custody. The trial court also imposed several community custody conditions, including special condition 11:

> Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior ·approval by your sexual deviancy provider.

Clerk's Papers (CP) at 65.

On appeal, Nguyen argued, among other things, that special condition 11 is invalid because it is unconstitutionally vague and not crime related. The Court of Appeals, in an unpublished decision, affirmed the trial court, holding that "sexually explicit material" is not unconstitutionally vague and that the condition was sufficiently related to Nguyen's

3

crimes. *State v. Hai Minh Nguyen*, No. 74358-9-I, slip op. (Wash. Ct. App. July 17, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/743589.pdf.

Nguyen sought review of the Court of Appeals' decision.

*State v. Norris*

In 2012, Norris pleaded guilty to three counts of second degree child molestation.

Her victim, D.T., was the younger brother of her children's father and was 12 years old when Norris first sexually assaulted him. In 2009, Norris and D.T. willfully began having sexual intercourse with each other while Norris and her children were staying at D.T.'s home in Federal Way, Washington. Norris was 25 years old at the time. Norris and D.T. had sexual intercourse several times throughout the relationship, both at D.T.'s Federal Way home and Norris' home in Kent, Washington. Norris also sent text messages to D.T., expressing her love for him, and sent photo messages of herself in a bra and pants.

Eventually, D.T. told a basketball teammate about his relationship with Norris. The teammate notified the basketball coach, who subsequently informed D.T.'s mother. In 2010, Norris was arrested for rape of a child.

The court imposed a 72-month standard range sentence, which it suspended in favor of imposing a special sex offender sentencing alternative (SSOSA) under RCW 9.94A.670(4). The court subsequently revoked Norris' SSOSA because she violated the terms of the special sentence by ingesting marijuana and failing to consume prescribed

medication. As a result, the court imposed the previously suspended sentence of 72 months' confinement, including several community custody conditions.

Norris challenged six of the community custody conditions. *State v. Norris*, 1 Wn. App. 2d 87, 404 P.3d 83 (2017). The Court of Appeals, in a published decision, held that four of the six conditions were invalid. *Id.* at 90. Notably, the court held that the condition requiring Norris to inform the community corrections officer of any "dating relationship" is valid, as it is not unconstitutionally vague. *Id.* The court also held that the condition prohibiting Norris from entering any "sex-related business" is invalid because it is not crime related. *Id.*

Norris sought review of the Court of Appeals decision affirming the "dating relationship" condition. Additionally, in a cross petition for review, the State sought review of the Court of Appeals decision reversing the "sex-related business" condition.

ANALYSIS

We review community custody conditions for an abuse of discretion and will reverse them if they are manifestly unreasonable. *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008) (citing *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). A trial court's imposition of an unconstitutional condition is manifestly unreasonable. *Id.*

Vagueness Challenges

The Fourteenth Amendment to the United States Constitution along with article I, section 3 of the Washington State Constitution require that citizens be afforded fair warning of proscribed conduct. *Id.* at 752 (citing *City of Spokane v. Douglass*, 115

5

Wn.2d 171, 178, 795 P.2d 693 (1990)). To that end, a community custody condition is unconstitutionally vague if it

> "(1) . . . does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement."

*Id.* (alterations in original) (quoting *Douglass*, 115 Wn.2d at 178 (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983))). Importantly, the disputed terms are considered in the context in which they are used, and "[i]f persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." *Douglass*, 115 Wn.2d at 179. A community custody condition "is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988). However, a stricter standard of definiteness applies where the community custody condition prohibits material protected by the First Amendment. *Bahl*, 164 Wn.2d at 753.

### "Sexually Explicit Material"—*Nguyen*

Nguyen argues that the community custody condition prohibiting him from possessing, using, accessing, or viewing any sexually explicit material is "intolerably vague." Suppl. Br. of Pet'r Hai Minh Nguyen at 12. Specifically, special condition 11 states:

> Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.

CP at 65.

Nguyen primarily relies on our decision in *Bahl*, where we held the term "pornographic materials" was unconstitutionally vague. Suppl. Br. of Pet'r Hai Minh Nguyen at 11. Nguyen correctly asserts that "pornographic material" "may 'include any nude depiction, whether a picture from *Playboy Magazine* or a photograph of Michelangelo's sculpture of David.'" *Id.* (quoting *Bahl*, 164 Wn.2d at 756). However, this case does not concern the ascertainability of "pornographic material" but, rather, the ascertainability of "sexually explicit material." In *Bahl*, we drew a distinction between the two.

Unlike "pornographic material," we held that the term "sexually explicit material" was not unconstitutionally vague. *Bahl*, 164 Wn.2d at 760. Specifically, we held "[w]hen all of the challenged terms, with their dictionary definitions, are considered together, we believe the condition is sufficiently clear." *Id.* at 759. In *Bahl*, the condition prohibited Bahl from frequenting "'establishments whose primary business pertains to sexually explicit . . . material.'" *Id.* at 758. We found that a person of ordinary intelligence, considering the dictionary definition of establishments whose primary business pertains to "sexually explicit material," would understand those establishments to include "adult bookstores, adult dance clubs, and the like." *Id.* at 759.

7

We also noted that "sexually explicit material" is defined in RCW 9.68.130(2). And while we did not determine whether a statutory definition is sufficient to give the requisite notice of proscribed conduct, we did recognize that it bolsters the conclusion that "sexually explicit material" is not an unconstitutionally vague term. RCW 9.68.130(2) states:

> "Sexually explicit material" . . . means any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

Despite Nguyen's concerns that "[c]ountless works of art, literature, film, and music explicitly describe, depict, and relate sex and sexuality," persons of ordinary intelligence can discern "sexually explicit material" from works of art and anthropological significance. Suppl. Br. of Pet'r Hai Minh Nguyen at 11.

We hold that the term "sexually explicit material" is not unconstitutionally vague.

"Dating Relationship"—*Norris*

Norris challenges the community custody condition that requires her to inform the community corrections officer of any "dating relationship." Norris argues that the term "dating relationship" is unconstitutionally vague because a reasonable person cannot understand what qualifies as "dating relationship" in a nonarbitrary manner. Norris attempts to bolster this point by offering a series of hypothetical scenarios:

> Suppose Norris has dinner with a man in a restaurant. Is that a date? Would that constitute a "dating relationship"? What if it was a one-time occasion? Is that enough to form a "relationship" with someone? Does

meeting someone twice for a social activity turn an ordinary relationship into a dating relationship? Three times? Suppose Norris strikes up a relationship with a man online, and then they go out to a movie. Is that a dating relationship? What if Norris and another person enjoy social activities together, but (perhaps contrary to outward appearances) they consider themselves "just friends." Does that qualify as a dating relationship?

Am. Suppl. Br. of Pet'r (Norris) at 5-6. Norris correctly acknowledges that some level of ambiguity will always remain in community custody conditions. However, "impossible standards of specificity are not required." *Eze*, 111 Wn.2d at 26. And a convicted person is not entitled to complete certainty as to the exact point at which his actions would be classified as prohibited conduct. *Id.* at 27. Instead, all that is required is that the proscribed conduct is sufficiently definite in the eyes of an ordinary person. *Douglass*, 115 Wn.2d at 179.

As we did in *Bahl*, here, we "may consider the plain and ordinary meaning as set forth in a standard dictionary." 164 Wn.2d at 754 (citing *State v. Sullivan*, 143 Wn.2d 162, 184-85, 19 P.3d 1012 (2001)). A "date" is defined as "an appointment between two persons" for "the mutual enjoyment of some form of social activity," "an occasion (as an evening) of social activity arranged in advance between two persons." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 576 (2002). A "relationship" is defined as "a state of affairs existing between those having relations." *Id.* at 1916. Additionally, "dating relationship" is defined in RCW 26.50.010(2),[1] which states:

> "Dating relationship" means a social relationship of a romantic nature.
> Factors that the court may consider in making this determination include:

---

[1] RCW 10.99.020(4) states that "'[d]ating relationship' has the same meaning as in RCW 26.50.010."

(a) The length of time the relationship has existed; (b) the nature of the relationship; and (c) the frequency of interaction between the parties.

Indeed, a person of ordinary intelligence can distinguish a "dating relationship" from other types of relationships. Despite Norris' contentions, a reasonable person, in considering the factors, would not conclude that individuals who are "just friends" or engage in a single social activity with one another are in a "dating relationship."

Norris also argues that the term "dating relationship" is unconstitutionally vague in light of the federal decision *United States v. Reeves*, 591 F.3d 77 (2d Cir. 2010). There, the court held that the term "significant romantic relationship" was unconstitutionally vague. *Id.* at 79. In coming to its conclusion, the court explained:

> What makes a relationship "romantic," let alone "significant" in its romantic depth, can be the subject of endless debate that varies across generations, regions, and genders. For some, it would involve the exchange of gifts such as flowers or chocolates; for others, it would depend on acts of physical intimacy; and for still others, all of these elements could be present yet the relationship, without a promise of exclusivity, would not be "significant."

*Id.* at 81. Norris' argument is unpersuasive, as the keys facts in *Reeves* are distinguishable from this case. The terms "significant" and "romantic" are highly subjective qualifiers, while "dating" is an objective standard that is easily understood by persons of ordinary intelligence.

We hold that "dating relationship" is not an unconstitutionally vague term.

Crime-Related Challenges

As a condition of community custody, a sentencing court may, in its discretion, impose "any crime-related prohibitions." RCW 9.94A.703(3)(f). A "'[c]rime-related

prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

### "Sexually Explicit Material"—*Hai Minh Nguyen*

Nguyen first argues that the State failed to show that the community custody condition prohibiting Nguyen from possessing or viewing "sexually explicit materials" directly relates to the circumstances of his crime. Suppl. Br. of Pet'r Hai Minh Nguyen at 5. Relying on dictionary definitions, Nguyen explains:

> [RCW 9.94A.030(10)] does not permit a prohibition based upon a mere circumstance of the crime but only one that "directly relates" to such a circumstance. To "relate" means "to show or establish a logical or causal connection between." WEBSTER'S [at] 1916. "Directly" means "in close relational proximity." Id. at 641. Thus, the prohibition must pertain to a close, logically connected part of the crime.

*Id.* While it is true the prohibited conduct must directly relate to the circumstances of the crime, "[t]his court reviews sentencing conditions for abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Such conditions are usually upheld if reasonably crime related. *Id.* at 36-37." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A court does not abuse its discretion if a "reasonable relationship" between the crime of conviction and the community custody condition exists. *State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015). The prohibited conduct need not be identical to the crime of conviction, but there must be "some basis for the connection." *Id.* at 657.

11

In *Warren*, the defendant sexually abused his two stepdaughters. 165 Wn.2d at 23. As a condition of his sentence, the defendant was prohibited from having contact with his wife, the mother of his victims. *Id.* at 31. While the defendant's wife was not the victim of his crimes, this court affirmed the no-contact order because it was "reasonably related" to the crime. *Id.* at 34. Specifically, the court explained that the defendant's wife "is the mother of the two child victims of sexual abuse for which [the defendant] was convicted; [the defendant] attempted to induce her not to cooperate in the prosecution of the crime; and [the defendant's wife] testified against [the defendant] resulting in his conviction of the crime." *Id.*

Similarly, in *State v. Kinzle*, 181 Wn. App. 774, 777-78, 326 P.3d 870 (2014), the defendant sexually assaulted his girlfriend's daughters. The sentencing court imposed a community custody condition prohibiting the defendant from "dat[ing] women [or] form[ing] relationships with families who have minor children." *Id.* at 785. In affirming the prohibition, the Court of Appeals held that it was "reasonably crime-related" "[b]ecause [the defendant's] crime involved children with whom he came into contact through a social relationship with their parents." *Id.*

As with *Warren* and *Kinzle*, Nguyen's access to "sexually explicit material" is certainly "reasonably related" to his crime of child rape and molestation. The respective sentencing judges in *Warren* and *Kinzle* used their discretion to impose prohibitions that address the cause of the present crime or some factor of the crime that might cause the convicted person to reoffend. For example, in *Warren*, the no-contact order aimed to

12

protect the defendant's wife, despite the fact that she was not the victim. And, in *Kinzle*, the prohibition against forming relationships with women who have minor children aimed to prevent the defendant from reoffending. Similarly, here, by imposing a prohibition on sexually explicit material, the sentencing court appeared to believe that such materials may trigger the defendant to reoffend or, perhaps, commit another sex crime. The State correctly argues that

> sexually explicit and erotic materials exist almost entirely for the purposes of sexual stimulation and ideation. It was reasonable for the trial court to decide that under the circumstances of Nguyen's child rape and molestation, it was appropriate to prohibit Nguyen from accessing materials designed to stimulate the dangerous sexual urges that Nguyen could not control, resulting in unspeakable harm to a child.

Suppl. Br. of Resp't (Nguyen) at 16. Nguyen argues that such a reading may permit a prohibition of "sexually explicit material" in all sex crimes. That is no different from requiring all drunk drivers to refrain from using alcohol or all persons convicted of drug offenses not to use drugs.[2] Nguyen also argues that there is no direct relationship between possessing or viewing sexually explicit materials and his crime. But, the State need not establish that access to "sexually explicit materials" *directly caused* the crime of conviction or will necessarily prevent the convict from reoffending. Rather, on review, we must decide if the trial court abused its discretion in prohibiting certain conduct. So

---

[2] Division Three of the Court of Appeals took a similar position in *State v. Magana*, 197 Wn. App. 189, 389 P.3d 654 (2016). There the defendant was found guilty of third degree rape, and the sentencing court imposed a number of community custody conditions, including prohibitions against "sexually explicit material" and "sex-related businesses." *Id.* at 193-94, 201. The Court of Appeals affirmed the prohibition, holding that the defendant "was convicted of a sex offense, [thus] conditions regarding access to X-rated movies, adult book stores, and sexually explicit materials were all crime related and properly imposed." *Id.* at 201.

long as it is reasonable to conclude that there is a sufficient connection between the prohibition and the crime of conviction, we will not disturb the sentencing court's community custody conditions.

Here, we find no abuse of discretion. Nguyen committed sex crimes and, in doing so, established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials," the only purpose of which is to invoke sexual stimulation.

Furthermore, because Nguyen's crimes of conviction were sex crimes, it is likely that a sexual deviancy program would order such conditions, even if a judge did not.

We hold that the community custody condition prohibiting Nguyen from possessing or viewing "sexually explicit material" is sufficiently crime related.

### "Sex-Related Business"—*Norris*

In *Norris*, the Court of Appeals held that a community custody condition prohibiting the defendant from entering "sex-related businesses" was not crime related, but that a community custody condition prohibiting access to "sexually explicit materials" was crime related. 1 Wn. App. 2d at 98-99.

The State argues that the court's holding is contradictory because "the purpose of prohibiting sex offenders from entering sex-related businesses is not to keep them away from the business of sex or the buildings in which it is housed—it is to keep them away from sexually explicit material." Suppl. Br. of Resp't (Norris) at 14. The issue of

viewing or possessing "sexually explicit materials," as it relates to Norris, is not before this court, nor is either party raising it. Thus, we address only whether prohibiting Norris from entering "sex-related businesses" is crime related.

Here, the State contends that there is a sufficient relationship between Norris' crimes and "entering businesses that peddle in sexual performance and sexually explicit materials." *Id.* at 13. Specifically, the State points to the fact that Norris' crimes included instances of "text-messaging sexually suggestive photos of herself to [the victim]." *Id.*

Norris asserts that "[t]here is no evidence that sex-related businesses, including businesses 'where the primary source of business is related to sexually explicit material' played *any* role in the crimes in this case." Am. Suppl. Br. of Pet'r (Norris) at 15. Indeed, nothing in the record suggests that Norris met her victim in a "sex-related business" or that her presence in such a business played a role in her crimes.

However, like Nguyen's condition discussed above, this condition has more to do with Norris' inability to control her urges and impulsivities than it does with the specific facts of her crimes. Norris' case is like *Kinzle*, in that it was clear that the prohibition was imposed to prohibit conduct that might cause the convict to reoffend. Here, it is unlikely that Norris will meet a minor, and potential victim, in a "sex-related business." But, it is reasonable to conclude that Norris will struggle to rehabilitate from her sexual deviance so long as she frequents "sex-related businesses." Norris' crimes have as much to do with her inability to control her sexual urges as they do with her access to minors.

We hold that the community custody condition prohibiting Norris from entering "sex-related businesses" is sufficiently crime related and that the trial court did not abuse its discretion in imposing this restriction.

## CONCLUSION

We affirm the Court of Appeals and hold that (1) the community custody condition prohibiting Nguyen from possessing or viewing "sexually explicit material" is not unconstitutionally vague, (2) the community custody condition requiring Norris to inform the community corrections officer of any "dating relationship" is not unconstitutionally vague, and (3) the community custody condition prohibiting Nguyen from possessing or viewing "sexually explicit material" is crime related. Additionally, we reverse the Court of Appeals and hold the community custody condition prohibiting Norris from entering any "sex-related business" is crime related.

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson_

_Owens, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._