# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50396-4-II |
| Respondent, | |
| v. | |
| HEBER SHANE GREEN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Heber S. Green appeals certain sentencing conditions imposed upon him after he pleaded guilty to first degree child molestation conviction. He argues that three community custody conditions are not crime related and that one community custody condition is unconstitutionally vague.

We hold that the community custody conditions that prohibit Green from accessing sexually explicit materials and sexual entertainment businesses are crime related. However, we also accept the State's concession and hold that the community custody condition imposing a curfew is not crime related. Finally we hold that the community custody condition requiring Green to notify his community custody officer (CCO) of any "romantic relationship" is unconstitutionally vague. We affirm the community custody conditions related to sexually explicit material and remand to the trial court to strike the condition related to curfew and to clarify the condition related to romantic relationships.

FACTS

In September 2016, by first amended information, the State charged Green with first degree child molestation, domestic violence. Green entered a plea of guilty to first degree child molestation with a special allegation of domestic violence. Green agreed that the trial court could review police reports and statements of probable cause to establish a factual basis for the plea.

The probable cause statement states that Green molested the victim on two separate occasions between August 2012 and August 2015. On both occasions, the victim was under 10 years old. The statement alleged that Green molested the victim once between August and December 2012 and once during August 2015.

The court sentenced Green to confinement and imposed community custody conditions. In appendix F to the judgment and sentence, the sentencing court imposed the following relevant community custody conditions:

CRIME RELATED PROHIBITIONS
. . . .
15. Do not possess or access any sexually explicit material or frequent adult bookstores, arcades or places where sexual entertainment is provided.
16. Do not access sexually explicit materials that are intended for sexual gratification.
. . . .
19. Shall inform your [CCO] of any romantic relationships to verify there are no victim-aged children involved.
. . . .
22. Abide by a curfew as set by the [CCO].

Clerk's Papers (CP) at 98-99 (bold omitted). Green appeals.

ANALYSIS

I. CRIME-RELATED CONDITIONS

Green challenges three crime-related community custody conditions arguing that they are not crime related: (1) do not possess or access any sexually explicit material or frequent adult bookstores, arcades or places where sexual entertainment is provided (condition 15), (2) do not access sexually explicit materials that are intended for sexual gratification (condition 16), and (3) abide by a curfew set by the CCO (condition 22). We accept the State's concession on condition 22, but uphold conditions 15 and 16.

A. PRINCIPLES OF LAW

"We review community custody conditions for an abuse of discretion and will reverse them if they are manifestly unreasonable." *State v. Nguyen*, ___ Wn.2d ___, 425 P.3d 847, 851 (2018). "A court does not abuse its discretion if a 'reasonable relationship' between the crime of conviction and the community custody condition exists." *Nguyen*, 425 P.3d at 853 (quoting *State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015)). As such, crime-related community custody "conditions are usually upheld if reasonably crime related." *Nguyen*, 425 P.3d at 853.

"As a condition of community custody, a sentencing court may, in its discretion, impose 'any crime-related prohibitions.'" *Nguyen*, 425 P.3d at 853 (quoting RCW 9.94A.703(3)(f)). "'A [c]rime-related prohibition means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted.'" *Nguyen*, 425 P.3d at 853 (internal quotation marks omitted) (alteration in original) (quoting RCW 9.94A.030(10)). "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *Nguyen*, 425 P.3d at 853 (quoting *Irwin*, 191 Wn. App. at 657). A

sentencing judge's discretion extends "to impos[ing] prohibitions that address the cause of the present crime or some factor of the crime that might cause the convicted person to reoffend." *Nguyen*, 425 P.3d at 854.

## B. SEXUALLY EXPLICIT MATERIALS

Conditions 15 and 16 prohibit Green from possessing or accessing "any sexually explicit material" and from accessing "sexually explicit materials that are intended for sexual gratification." CP 98-99. Green argues that these prohibitions are not crime related because "there was no evidence that the crime involved sexually explicit material." Br. of Appellant at 5. We reject Green's argument.

In *Nguyen*, our Supreme Court held that a community custody condition prohibiting the defendant from possessing, using, or accessing "'sexually explicit material' [was] certainly 'reasonably related' to his crime of child rape and molestation." 425 P.3d at 854. The relevant challenged condition in *Nguyen* stated, in part,

> Do not possess, use, access, or view any sexually explicit material . . . or erotic materials . . . or any material depicting any person engaged in sexually explicit conduct . . . unless given prior approval by your sexual deviancy provider.

425 P.3d at 850. The facts underlying Nguyen's convictions did not include any possession, use, or access of sexually explicit materials. *Nguyen*, 425 P.3d at 850.

Our Supreme Court rejected Nguyen's "argu[ment] that there [was] no direct relationship between possessing or viewing sexually explicit materials and his crime." *Nguyen*, 425 P.3d at 854. *Nguyen* explained that "the State need not establish that access to 'sexually explicit materials' *directly caused* the crime of conviction or will necessarily prevent the convict from reoffending."

4

425 P.3d at 854. Instead, the issue was whether "the trial court abused its discretion in prohibiting certain conduct." *Nguyen*, 425 P.3d at 854.

Our Supreme Court concluded that (1) by "commit[ting] sex crimes," Nguyen "established his inability to control his sexual urges," (2) "by imposing a prohibition on sexually explicit material, the sentencing court appeared to believe that such materials may trigger the defendant to reoffend or, perhaps, commit another sex crime," and (3) "[i]t is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." *Nguyen*, 425 P.3d at 854. Because there was "a sufficient connection between the prohibition and the crime of conviction," there was "no abuse of discretion." *Nguyen*, 425 P.3d at 854.

Here, as in *Nguyen*, Green was convicted of child molestation, and the sentencing court imposed community custody conditions 15 and 16 prohibiting Green from possessing or accessing sexually explicit materials. We follow the reasoning in *Nguyen.* We hold that there was a sufficient connection between the prohibitions against possessing or accessing sexually explicit materials in conditions 15 and 16 and Green's crime. The sentencing court did not abuse its discretion in imposing these crime-related prohibitions.

## C. SEXUAL ENTERTAINMENT

Condition 15 also prohibits Green from "frequent[ing] adult bookstores, arcades or places where sexual entertainment is provided." CP at 99. Green argues that this prohibition is not crime related because "there was no evidence that the crime involved . . . adult bookstores, arcades, or places of sexual entertainment." Br. of Appellant at 5. We reject Green's argument.

In *Nguyen*, our Supreme Court held that a "condition prohibiting the defendant from entering any 'sex-related business' [was] crime related." 425 P.3d at 849. There, the defendant, Norris entered a plea of guilty to three counts of second degree child molestation. *Nguyen*, 425 P.3d at 849. The relevant challenged condition in *Nguyen* stated,

> Do not enter sex-related businesses, including: x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material.

*State v. Norris*, 1 Wn. App. 2d 7, 97, 404 P.3d 83 (2017), *aff'd in part, rev'd in part*, 425 P.3d 847; *Nguyen*, 425 P.3d at 851. "[N]othing in the record suggest[ed] that Norris met her victim in a 'sex-related business' or that her presence in such a business played a role in her crimes." *Nguyen*, 425 P.3d at 855.

However, our Supreme Court rejected Norris's argument that the prohibition was not crime related. *Nguyen*, 425 P.3d at 855. *Nguyen* explained that the challenged "condition ha[d] more to do with Norris' inability to control her urges and impulsivities than it does with the specific facts of her crimes." 425 P.3d at 855. Our Supreme Court held that (1) "Norris' crimes have as much to do with her inability to control her sexual urges as they do with her access to minors," (2) "it was clear that the prohibition was imposed to prohibit conduct that might cause the convict to reoffend," and (3) "it is reasonable to conclude that Norris will struggle to rehabilitate from her sexual deviance so long as she frequents 'sex-related businesses.'" *Nguyen*, 425 P.3d at 855. Because the prohibition was "sufficiently crime related" there was no abuse of discretion. *Nguyen*, 425 P.3d at 855.

Here, like in *Nguyen*, Green was convicted of child molestation and the sentencing court imposed community custody condition 15 prohibiting Green from frequenting "places where

sexual entertainment is provided." CP at 99. We follow the reasoning in *Nguyen*. We hold that there was a sufficient connection between the prohibition against frequenting places where sexual entertainment is provided in condition 15 and Green's crime. The trial court did not abuse its discretion in imposing this crime-related prohibition.

### D. CURFEW

Condition 22 provides that Green must "[a]bide by a curfew as set by the [CCO]." CP at 99. Green argues that condition 22 is not crime related because "[t]here was no evidence that the crime necessitated a curfew." Br. of Appellant at 5. The State concedes that condition 22 is not crime related because "there are no facts in this record that would justify such a condition." Br. of Resp't at 7. We accept the State's concession.

This condition restricts Green's ability to leave his residence and there is no evidence that activities outside Green's residence are sufficiently connected to his crimes. We hold that the sentencing court abused its discretion in imposing condition 22.

### II. UNCONSTITUTIONALLY VAGUE CONDITION

Green argues that the term "romantic relationship" in community custody condition 19 is highly subjective and is therefore unconstitutionally vague. Br. of Appellant at 6-8. The State responds that the words "'romantic relationship'" taken alone may have some ambiguity, but that the condition, read as a whole, is abundantly clear because "[p]eople of ordinary intelligence can easily appreciate the language and purpose of condition 19." Br. of Resp't at 8, 10. We agree with Green.

A. PRINCIPLES OF LAW

"We review community custody conditions for an abuse of discretion and will reverse them if they are manifestly unreasonable." *Nguyen*, 425 P.3d at 851. However, "[a] trial court's imposition of an unconstitutional condition is manifestly unreasonable." *Nguyen*, 425 P.3d at 851.

"The Fourteenth Amendment to the United States Constitution along with article I, section 3 of the Washington State Constitution require that citizens be afforded fair warning of proscribed conduct." *Nguyen*, 425 P.3d at 851. "[A] community custody condition is unconstitutionally vague if it '(1) . . . does not define the criminal offense with sufficient definitiveness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Nguyen*, 425 P.3d at 851 (alterations in original) (internal quotation marks omitted) (quoting *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008)).

"[D]isputed terms are considered in the context in which they are used, and '[i]f persons of ordinary intelligence can understand what the [law] prescribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." *Nguyen*, 425 P.3d at 851 (some alterations in original) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)). However, "some level of ambiguity will always remain in community custody conditions" and "'impossible standards of specificity are not required.'" *Nguyen*, 425 P.3d at 852 (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988)). Therefore, "[a] community custody condition 'is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which [their] actions would be classified as prohibited conduct.'" *Nguyen*, 425 P.3d at 851 (quoting *Eze*, 111 Wn.2d at 27). "Instead, all that

is required is that the proscribed conduct is sufficiently definite in the eyes of an ordinary person." *Nguyen*, 425 P.3d at 852.

### B. ROMANTIC RELATIONSHIP

Reviewing courts "'may consider the plain and ordinary meaning [of terms within a community custody condition] as set forth in a standard dictionary.'" *Nguyen*, 425 P.3d at 852 (quoting *Bahl*, 164 Wn.2d at 754). The dictionary definition of "romantic" is, in relevant part, "having an inclination or desire for romance . . . characterized by a strong personal sentiment, highly individualized feelings of affection, or the idealization of the beloved or the love relationship." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1970 (2002)). "A 'relationship' is defined as 'a state of affairs existing between those having relations.'" *Nguyen*, 425 P.3d at 852 (quoting WEBSTER'S 1916). Here, based on the dictionary definitions of "romantic" and "relationship," the term "romantic relationship" refers to a state of affairs between two people involving highly subjective emotions and feelings.

In *Nguyen*, our Supreme Court noted, in dicta, that "romantic" is a "highly subjective qualifier[ ]." 425 P.3d at 853.[1] Our Supreme Court held "that the condition requiring the defendant to disclose any 'dating relationship' is not unconstitutionally vague." *Nguyen*, 425 P.3d at 849. *Nguyen* looked to the dictionary definition of "date," meaning "'an appointment between two persons' for 'the mutual enjoyment of some form of social activity,' 'an occasion (as an evening) of social activity arranged in advance between two persons.'" 425 P.3d at 852 (quoting WEBSTER'S 576). Additionally, the court relied on RCW 26.50.010(2) and RCW 10.99.020(4),

---

[1] The statement was dicta because the subjectivity of the term "romantic" was not essential to the holding that "dating relationship" is not unconstitutionally vague. *Nguyen*, 425 P.3d at 853.

which define a "dating relationship" as "a social relationship of a romantic nature." WEBSTER'S 1916. Because "a person of ordinary intelligence can distinguish a 'dating relationship' from other types of relationships" based on "'[t]he length of time the relationship has existed,'" "'the nature of the relationship,'" and "'the frequency of interaction between the parties,'" *Nguyen* upheld the challenged community custody condition. 425 P.3d at 853 (quoting RCW 26.50.010(2)).

*Nguyen* distinguished *United States v. Reeves*, 591 F.3d 77 (2d Cir. 2010), which "held that the term 'significant romantic relationship' was unconstitutionally vague." 425 P.3d at 853 (quoting *Reeves*, 591 F.3d at 79). Our Supreme Court contrasted "[t]he terms 'significant' and 'romantic,'" which "are highly subjective qualifiers," with the term "'dating,'" which "is an objective standard that is easily understood by persons of ordinary intelligence." *Nguyen*, 425 P.3d at 853.

Here, unlike in *Nguyen*, condition 19 requires Green to report "any romantic relationships." CP at 99. Given the inherent subjectivity in the term "romantic relationship," condition 19 fails to provide ordinary people with fair warning of the conduct proscribed and fails to protect Green from arbitrary enforcement of the condition. We hold that "romantic relationship" contains a "highly subjective qualifier[ ]" rendering this condition unconstitutionally vague. *Nguyen*, 425 P.3d at 853.

### III. ATTORNEY FEES

Green argues that this court should not award costs in the event the State prevails on appeal because he is indigent. The State responds that "it will not seek appellate costs in this case." Br. of Resp't at 10. We accept the State's representation that it will not seek costs on appeal and decline to award any.

No. 50396-4-II

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

BJORGEN, J.

11