# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54143-2-II |
| Respondent, | |
| v. | |
| GARRETT OCCIANO, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Garrett Occiano appeals from his guilty plea convictions for second degree rape of a child and second degree child molestation. He challenges three of his community custody conditions, arguing that they are not crime related. He further argues that, due to his indigency, the sentencing court erred by requiring him to pay supervision fees as a condition of his community custody. We agree that the community custody condition subjecting Occiano to curfew requirements set by his community corrections officer (CCO) is not crime related, and we remand for the superior court to strike this condition. We otherwise affirm.

FACTS

The State charged Occiano with second degree rape of a child and second degree child molestation, both with domestic violence special allegations. The victim was Occiano's daughter. In the statement of probable cause, the State alleged that the crimes occurred inside the family home.

Occiano pled guilty to both charges, and the superior court accepted the guilty pleas. In his plea statement, Occiano admitted to the charged crimes, but he did not provide any specific details about the offenses beyond what was necessary to establish the bare elements of the offenses.

A pre-sentence investigation (PSI) was conducted before sentencing. The PSI report did not mention whether Occiano ever viewed any sexually explicit materials or ever called any 900 numbers. Nor did it explain the details of the offenses.

In his sentencing memoranda and at the sentencing hearing, Occiano challenged several of the proposed community custody conditions. Among the community custody conditions he challenged, were the requirements that he (1) "[s]hall not own, use, possess or peruse sexually explicit materials" (the sexually explicit materials condition), (2) "[s]hall be subject to curfew requirements as directed by his CCO" (the curfew condition), and (3) "[c]all no 900 numbers" (the 900 numbers condition). Clerk's Papers (CP) 58-59. He argued that the 900 numbers condition was overbroad and vague and that all three of these conditions were not crime related. Occiano did not challenge the community custody condition requiring him to pay "supervision fees as determined by the Department of Corrections [(DOC)]." *Id.* at 58. And during the sentencing hearing neither the court nor the parties mentioned the supervision fees.[1]

In the Appendix H to the judgment and sentence, the superior court imposed numerous community custody conditions, including the sexually explicit materials condition, the curfew condition, the 900 numbers condition, and the requirement that Occiano pay supervision fees.

---

[1] At sentencing, the State requested and the superior court imposed only one cost, the mandatory "victim's assessment." Verbatim Report of Proceedings (VRP) (Nov. 25, 2019) at 27. But there was no discussion of his ability to pay legal financial obligations.

Occiano appeals the three community custody conditions and the requirement that he pay supervision fees.

ANALYSIS

Occiano argues that the sexually explicit materials, curfew, and 900 numbers community custody conditions are not crime related. He also challenges the requirement that he pay the supervision fee as directed by the DOC in light of his indigency. We agree that the curfew condition is not crime related. But we otherwise affirm.

## I. CRIME-RELATED CONDITIONS

### A. LEGAL PRINCIPLES

"We review community custody conditions for an abuse of discretion and will reverse them [only] if they are manifestly unreasonable." *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).

> As a condition of community custody, a sentencing court may, in its discretion, impose "any crime-related prohibitions." RCW 9.94A.703(3)(f). A "'[c]rime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

*Id.* at 683. We will uphold such a condition if it is "reasonably crime related." *Id.* "A court does not abuse its discretion if a 'reasonable relationship' between the crime of conviction and the community custody condition exists." *Id.* at 684 (citing *State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015)). "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *Id.* (quoting *Irwin*, 191 Wn. App. at 657).

B. POSSESSING, OWNING, OR PERUSING SEXUALLY EXPLICIT MATERIALS

Occiano first argues that the community custody condition prohibiting him from possessing, owning, or perusing sexually explicit materials is not crime related.[2] We disagree.

Although Occiano is correct that the record does not contain any evidence that sexually explicit materials played a direct role in his crimes, our supreme court's decision in *Nguyen* demonstrates that this type of relationship is not required. *Id.* at 685. In *Nguyen*, the court addressed a community custody condition similar to the one here and held that a direct causal relationship with the offense or the risk of reoffense was not required. *Id.* Instead, the court held that even though there was no evidence that such materials had directly contributed to the appellant's sex offenses, the fact the appellant had been convicted of sex crimes rendered it "both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." *Id.* at 686.

The same reasoning applies here. As in *Nguyen*, there is a reasonable relationship between the sex crimes and the community custody condition prohibiting Occiano from possessing, owning, or perusing sexually explicit materials. Thus, the superior court did not abuse its discretion when it imposed this community custody condition.

C. CURFEW REQUIREMENTS

Occiano next argues that the superior court abused its discretion when it imposed the community custody condition subjecting him "to curfew requirements as directed by his CCO."

---

[2] We note that Occiano does not raise any vagueness, overbreadth, or First Amendment challenges to this condition.

CP at 58. He argues that this condition is not crime related. The State responds that this condition was appropriate because Occiano is subject to community custody for life and the condition is part of a comprehensive set of conditions that assist the DOC in its supervisory role. We agree with Occiano.

The State does not dispute, and we agree, that there is nothing in the record suggesting that a curfew is related to the nature of the crimes. The information available to the sentencing court suggested only that these crimes were committed inside the family home, not that Occiano had access to the victim because he was able to leave home unsupervised at a late hour. Thus, unless the State can establish another basis upon which the superior court could impose the curfew condition, the superior court abused its discretion in imposing this condition.

The State argues that the curfew condition was appropriate because it is part of a comprehensive set of conditions that assist the DOC in its supervisory role. Although requiring Occiano to abide by a curfew imposed by the DOC could potentially assist the DOC in its supervision of Occiano, the State cites no authority stating that the superior court can require a defendant to abide by a condition that is not crime-related simply to facilitate the DOC's supervision. The only authority the State cites is RCW 9.94A.704(2)(a), which allows *the DOC* to establish and modify conditions of community custody to address the risk to community safety. While this statute allows the DOC to impose additional community custody conditions, it does not allow the superior court to impose community custody conditions that are not statutorily authorized or crime related.

The State notes that the superior court also required Occiano to seek approval from the DOC to travel outside geographical limits imposed by the CCO, change his address or

employment, start employment, live at a location, possess certain sexually oriented material, or have contact with children. But, unlike a curfew, each of those limitations is either statutorily required under RCW 9.94A.704(3)(b) and (c), or crime related.

Because the curfew condition was not crime related and there is no statutory basis under which the superior court imposed the condition, the superior court abused its discretion when it imposed this condition. Accordingly, we remand to the superior court with instructions to strike the curfew condition.

D. 900 NUMBERS

Occiano next challenges the community custody condition prohibiting him from calling "900 numbers." CP at 73. Again, he argues that this condition is not crime related. We disagree.[3]

Both parties agree that 900 numbers can be used to provide "sex-based entertainment" or as a conduit for engaging in "sexually explicit phone conversations." Br. of Appellant at 14; Br. of Resp't at 10. Because of the sexual nature of the 900 numbers, this condition falls into the same category as the condition prohibiting possessing, owning, or perusing sexually explicit materials that we discuss above. As with the sexually explicit materials condition, because Occiano had been convicted of sex crimes it is "both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,'" regardless of their form, when "the only purpose of which is to invoke sexual stimulation." *Nguyen*, 191 Wn.2d at 686.

---

[3] On appeal Occiano, does not argue that this condition is overbroad. But we note that nothing in this opinion precludes the superior court from clarify the scope of this condition on remand.

Thus, under *Nguyen*, there is a reasonable relationship between the crimes and the community custody condition prohibiting him from using 900 numbers. Accordingly, the superior court did not abuse its discretion when it imposed this community custody condition.

## II. SUPERVISION FEES

Finally, Occiano argues that the superior court erred in requiring him to pay supervision fees because they are discretionary "costs" that cannot be imposed on indigent defendants under RCW 10.01.160(3).[4] Br. of Appellant at 15. We disagree.

The supervision fees were imposed under RCW 9.94A.703(2)(d). RCW 9.94A.703(2)(d) provides that, "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the department." Although the supervision fees are a discretionary legal financial obligations that are waivable by the superior court, they are not "costs" that require waiver under RCW 10.01.160(3) when the defendant is indigent. *State v. Starr*, 16 Wn. App. 2d 106, 109, 479 P.3d 1209 (2021). Thus, the superior court was not required to waive the supervision fees due to Occiano's indigency. Furthermore, although the superior court waived costs, there is nothing in the record demonstrating that it was superior court's intention to waive the supervision fees. Accordingly, this argument fails.

---

[4] RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay *costs* if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3) (a) through (c). In determining the amount and method of payment of costs for defendants who are not indigent as defined in RCW 10.101.010(3) (a) through (c), the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

(Emphasis added.)

No. 54143-2-II

We note, however, that "[t]he barriers that [legal financial obligations] impose on an offender's reintegration to society are well documented . . . and should not be imposed lightly merely because the legislature has not dictated that judges conduct the same inquiry required for discretionary costs." *State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015). We agree that this important policy should be broadly supported. Therefore, the superior court is free to strike the community custody supervision fee on remand.

CONCLUSION

We agree that the community custody condition subjecting Occiano to curfew requirements set by his CCO is not crime related, and we remand for the superior court to strike this condition. We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

GLASGOW, A.C.J.

VELJACIC, J.

8