IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of: | ) ) ) | No. 80545-2-I |
| MARK ALLEN FAGIN | ) ) | DIVISION ONE |
| Petitioner. | ) ) ) ) ) | UNPUBLISHED OPINION |

HAZELRIGG, J. — Mark A. Fagin pleaded guilty to attempted rape of a child in the second degree and rape of a child in the third degree. The court imposed numerous community custody conditions as a part of his sentence. Fagin later filed a personal restraint petition. The petition was denied in part and the surviving challenges were referred to a panel of this court for consideration of the constitutional validity of several of those community custody conditions. We accept the State's concessions on a number of the challenged conditions, grant the petition, and remand to the trial court for correction of the various deficiencies identified herein.

FACTS

In December 2017, Mark Fagin was charged with two counts of attempted rape of a child in the first degree, attempted commercial sexual abuse of a minor, and rape of a child in the second degree. Fagin pleaded guilty as charged to the

amended information filed by the State, pursuant to a plea agreement, which reduced the charges to count 1, attempted rape of a child in the second degree, and count 2, rape of a child in the third degree. The plea statement permitted the court to review the police reports and probable cause affidavit to establish a factual basis for the plea.

Fagin's conviction for count 1 arose from an incident where he responded to an advertisement on Craigslist[1] posted by law enforcement, which involved officers posing as a mother offering up her two fictitious daughters for sexual activity. During a text exchange with Fagin that evolved from his response to the ad, a detective posing as the mother said her "daughters" were 11 and 6 years old. As a result of this communication about the "daughters," Fagin and the "mother" agreed on a meeting place. Fagin was arrested when he arrived at the location. Fagin's conviction for count 2 was based on events that occurred in 2010 when Fagin was living with a woman and her daughter, A.R., for two years.

In October 2018, the court imposed an indeterminate sentence of 90 months to life in prison on count 1 and 34 months of confinement on count 2. A lifetime term of community custody was also imposed. The community custody conditions imposed by the court are contained in what appears to be a stock form prepared by the Department of Corrections (DOC) and referenced in the DOC presentence report.

In October 2019, Fagin filed a pro se personal restraint petition (PRP), arguing that he received ineffective assistance of counsel, the court incorrectly

---

[1] Craigslist is a website that allows users to post and view classified advertisements and community notices.

calculated his sentence on count 1, and that numerous community custody conditions were improper. The Acting Chief Judge of this court determined that Fagin's challenges as to the community custody conditions were not frivolous, referred those issues to a panel of judges for consideration on the merits, and appointed counsel to assist Fagin. The remaining PRP claims were dismissed.

ANALYSIS

Fagin challenges numerous community custody conditions on constitutional grounds. "To receive collateral relief by a PRP, a petitioner must show either a constitutional error that resulted in actual and substantial prejudice or a nonconstitutional error that resulted in a fundamental defect that caused a complete miscarriage of justice." In re Pers. Restraint of Brettell, 6 Wn. App. 2d 161, 166–67, 430 P.3d 677 (2018).

We review community custody conditions for abuse of discretion. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). "A trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition, and we review constitutional questions de novo." State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

I.      Plethysmograph Testing

Fagin first challenges the condition under Additional Sentence Requirements that requires him to "[s]ubmit to a sexual history and periodic polygraphs and/or plethysmograph assessments at own expense as directed by [the] Department of Corrections or therapist." In particular, Fagin argues that this

condition is unconstitutional because it permits plethysmograph testing at the direction of the DOC. Here, the State admits that this condition is unconstitutional under State v. Land, 172 Wn. App. 593, 605–06, 295 P.3d 782 (2013). Land makes clear that only a treatment provider may order a highly invasive plethysmograph examination. Id. We agree with the parties and remand for the trial court to modify this condition to comply with our case law.[2]

II.     Infringement on the Right to Parent

Fagin next challenges two separate conditions, asserting that they violate his right to parent and that they must provide an exception for his biological child. Condition #2 under Crime Related Prohibitions reads:

> Avoid contact with minors and adhere to the instructions of the Community Corrections Officer concerning residence and employment, unless otherwise authorized by the Department of Corrections and treatment provider with an adult sponsor approved by the Department of Corrections.

Condition #6 under Additional Sentence Requirements states "You shall not stay overnight in a residence where there are minor children, as directed by your Community Corrections Officer." During the pendency of this PRP, the parties addressed the primary concern Fagin raised with regard to contact with his biological son. With permission of a Commissioner of this court, they entered an agreed order in the trial court amending the language of condition #2 to allow for contact with his son during his incarceration.

---

[2] Given that this has been the state of the law on ordering plethysmograph testing pursuant to community custody conditions since at least 2013, the State would be well served by ensuring that any pattern forms used at sentencing are appropriately updated or, at minimum, hand-modified to comport with these constitutional considerations.

However, Fagin argues that these challenges must still be considered by this panel because he may potentially have other children in the future. It is unclear why this aspect of his argument was not also addressed when the parties appeared before the trial court to modify the language of condition #2, particularly given that both parties cited the authority for such a remedy in their respective briefing. In In re Personal Restraint of Sickels, the court accepted a concession by the State that an exception must be made to some conditions for any potential biological children Sickels might have in the future, despite the fact that he was childless at the time that he raised the challenge. 14 Wn. App. 2d 51, 58–59, 469 P.3d 322 (2020); see also United States v. Loy, 237 F.3d 251, 270 (3d Cir. 2001). Such a modification should be made on remand in this case as well, particularly given that an exception has already been made for his current biological child as to condition #2.[3]

III.     Vagueness

Fagin next asserts that several of his other community custody conditions are unconstitutionally vague. Both under the Fourteenth Amendment of the United States Constitution and article I, section 3 of our constitution, "[a] legal prohibition, such as a community custody condition, is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." Wallmuller, 194 Wn.2d at

---

[3] The parties appear to agree that Fagin's minor son will reach the age of majority before his father is released from prison. As such, condition #6 would only apply to any future children Fagin may have, which mirrors the facts of Sickels.

238–39 (internal quotations marks omitted) (quoting State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018)). "If a person of ordinary intelligence can understand what behavior a condition forbids, given the context in which its terms are used, the community custody condition is valid." Brettell, 6 Wn. App. 2d at 168. "[A] community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." Padilla, 190 Wn.2d at 677 (quoting State v. Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)).

A.    Avoiding Places Minors Frequent

Fagin challenges condition #3 of the listed Crime Related Prohibitions, which states that he must:

> Avoid schools, playgrounds, child-care centers, church youth programs, parks and recreational programs, services used by minors, unless otherwise approved by the Department of Corrections with a sponsor approved by the Department of Corrections.

The State concedes that the condition is unconstitutional as written and should be modified. The State proposes amending the condition to read: "Avoid places where minors congregate including schools, playgrounds, child-care centers, church youth programs, parks and recreational programs, unless otherwise approved by the Department of Corrections [with a sponsor approved by the Department of Corrections]." We accept the concession and remand for this modification in light of Wallmuller, 194 Wn.2d 234.

B.     Limitations on Forming Relationships

Fagin also challenges one aspect of condition #5 under Additional Sentence Requirements as ordered by the trial court, which states "Do not date people or form relationships with families who have minor children, as directed by your Community Corrections Officer." Fagin asserts that "form relationships" is unconstitutionally vague as the condition does not inform him of what constitutes a "relationship" or what it means to "form" one. As Fagin points out in his briefing, this court has struck this exact phrasing from nearly identical community custody conditions numerous times. See State v. Robinett, No. 50653-0-II, slip op. at 7–9, (Wash. Ct. App. Jan. 15, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050653-0-II%20Unpublished%20Opinion.pdf; In re Pers. Restraint of Hulbert, No. 80870-2-I, slip op. at 3–4 (Wash. Ct. App. Jul. 27, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/808702.pdf; State v. Mansour, No. 78708-0-I, slip op. (unpublished portion) at 34–36 (Wash. Ct. App. Aug. 24, 2020), https://www.courts.wa.gov/opinions/pdf/787080.pdf. We similarly conclude that the challenged language in condition #5 which prohibits Fagin from, "form[ing] relationships with families who have minor children, as directed by your Community Corrections Officer," is unconstitutionally vague and accordingly, we remand for the trial court to strike it from the judgment and sentence.

C.     Use or Possession of Sexually Explicit Material

Fagin's next challenge relates to another of his Additional Sentence Requirements, condition #10, which states "Do not seek out, use, or possess,

sexually explicit material as defined by treatment provider or Indeterminate Sentence Review Board [(ISRB)]." The State once again concedes that a portion of this condition must be stricken in order to comply with due process. The State agrees with Fagin that the language that grants the ISRB discretion to define sexually explicit material must be removed. We then need only consider whether the condition remains unconstitutionally vague if this determination is left to the sole discretion of the treatment provider. Fagin argues that sufficient notice as to what constitutes "sexually explicit material" may only be provided by way of a statutory definition. In response, the State proposes that the definition of sexually explicit material contained in RCW 9.68.130 is appropriate, in conjunction with the discretion of the treatment provider.

We agree with the State's proposal to define sexually explicit material by way of RCW 9.68.130 as it provides clear and sufficient notice to the supervised person. We, however, decline to allow a treatment provider to further define or limit access to the prohibited sexually explicit material. A treatment provider may not be familiar with the legal nuance regarding free speech concerns that our courts have had to address previously. See State v. Bahl, 164 Wn.2d 739, 753–58, 193 P.3d 678 (2008); see also State v. Nguyen, 191 Wn.2d 671, 679–81, 425 P.3d 847 (2018).

D.    Monitoring Software for Internet Access

Fagin argues that the following condition contained in the list of Additional Sentence Requirements is unconstitutionally vague: "You shall not access the Internet on any device without approved monitoring software." He asserts that this

condition is subject to arbitrary enforcement because the CCO may approve or otherwise decide the scope of the monitoring software. We first question whether the condition actually specifies that the discretion rests with the CCO in the absence of specific language to that effect, particularly in light of other conditions listed in Appendix F that expressly note the discretion of the treatment provider, ISRB, CCO, or DOC. In the absence of language that puts Fagin on notice as to who may approve the monitoring software, we must remand as the condition is vague. We cannot conclude that a person of ordinary intelligence, when reading this condition in the context of the conditions as a whole, would be able to ascertain who approves the required monitoring software. Throughout the appendix to the judgment and sentence that contains these conditions, the grants of discretion to various supervising authorities are otherwise relatively specific.

As to the substance of the condition requiring use of approved monitoring software for any internet access, we are bound by our Supreme Court's recent opinion in State v. Johnson. 197 Wn.2d 740, 487 P.3d 839 (2021). The Johnson court reviewed a vagueness challenge to a condition which prohibited the, "use or access [of] the World Wide Web unless specifically authorized by [his community custody officer] through approved filters." Id. at 744 (alterations in original). The court reasoned that the crime Johnson committed, factually similar to Fagin's crimes of conviction, informed what sort of filter would be appropriate for use. Id. at 749. The court also noted that, when reading the context of the conditions overall, the scope of limitations the filter should provide was ascertainable to an ordinary person. Id. We remand to the trial court to adapt this condition of Fagin's

community custody to ensure that the delegation of authority for approving the monitoring software is clear. Contrary to Fagin's assertion, Johnson makes clear that we need not direct that the condition expressly specify the type of filter. Id. 740. Because we remand for correction on the bases specified here, we need not consider Fagin's further challenges to this condition.[4]

IV. Limitations on Accessing Social Media

Fagin's final challenge is to condition #11 of Additional Sentence Requirements, which provides "You shall not visit, have accounts for or utilize social media or websites which advertise or promote dating, prostitution, casual sexual relationships, or similar content." Fagin specifically argues that this condition infringes on his First Amendment rights such that the condition requires narrow tailoring. We agree and remand for consideration on such grounds as the record lacks any indication of an overbreadth analysis by the trial court, which is a prerequisite to imposing a condition of this sort.

"A regulation implicating First Amendment speech must be narrowly tailored to further the State's legitimate interest." Padilla, 190 Wn.2d at 678. For this reason, "a restriction implicating First Amendment rights demands a greater degree of specificity and must be reasonably necessary to accomplish the essential needs of the state and public order." Id. Additionally, "[t]here must be no reasonable alternative way to achieve the State's interest." State v. Warren, 165 Wn.2d 17, 34–35, 195 P.3d 940 (2008). A condition is unconstitutionally

___

[4] On remand, the parties may further litigate any issues they identify as to free speech or warrantless searches arising from this condition.

overbroad if it infringes on an individual's right to free speech or free association beyond what may legitimately be regulated by the State. State v. Riles, 135 Wn.2d 326, 346, 957 P.2d 655 (1998), overruled on other grounds by Valencia, 169 Wn.2d 782. Restrictions on social media may violate an individual's First Amendment rights. Packingham v. North Carolina, 137 S. Ct. 1730, 1735–38, 198 L. Ed. 2d 273 (2017). The trial court must establish on the record that the condition is narrowly tailored to achieve the State's legitimate interest and no other reasonable alternative to prevent the concerned conduct exists. State v. DeLeon, 11 Wn. App. 2d 837, 840–41, 456 P.3d 405 (2020).

Here, the record is devoid of any consideration as to how this condition was drafted, its impact on Fagin's First Amendment rights, or whether there were less restrictive alternatives to achieve the State's interest. On remand, the trial court must conduct the required overbreadth analysis on the record as required by DeLeon, 11 Wn. App. 2d 837.

We grant Fagin's petition and remand to strike or revise the various conditions identified.

WE CONCUR:

- 11 -