# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50899-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| PATRICK MICHAEL BELSER, | |
| Appellant. | |

MAXA, C.J. – Patrick Belser appeals his convictions and sentence for multiple sex offenses. He argues that the trial court erred in allowing him to represent himself and that the trial court improperly imposed three community custody conditions. Belser also asserts multiple claims in a statement of additional grounds (SAG).

We hold that (1) the trial court did not err in granting Belser's request to represent himself; (2) as the State concedes, the sentencing conditions prohibiting the consumption of marijuana and use of social media were improper and the condition prohibiting Belser from being in areas where children congregate should be revised; and (3) Belser's SAG claims have no merit. Accordingly, we affirm Belser's convictions and the length of his sentence, but we remand for the trial court to correct his community custody conditions.

## FACTS

In 2015, the State charged Belser in Clark County with second degree child rape (count 1), second degree child molestation (count 2), third degree child molestation (counts 3 and 5),

third degree child rape (count 4), and sexual exploitation of a minor (count 6). Each count

charged an aggravating factor that the defendant used his position of trust to facilitate the

commission of the offenses. Counts 1, 2, 3, and 6 also charged an aggravating factor that the

offense was part of an ongoing pattern of sexual abuse.[1] The State alleged that Belser committed

these offenses against three minors between January 13, 2002 and June 16, 2011.

Before trial, Belser requested that he be allowed to represent himself. The trial court

engaged Belser in a colloquy in which the court discussed the charged offenses. When the court

began informing Belser about the potential sentences for the charged crimes, defense counsel

interrupted and stated:

> We have gone over that, Your Honor, multiple times in terms of the, the offer in King County. Once again, he has discussed that with his attorney up there, he and I have discussed it at length, it was discussed, obviously plea negotiations and things of that nature, so I'm confident that he's well aware. That's something that I've impressed upon him, most importantly based on his request to go *pro se*.

Report of Proceedings (RP) at 31. And the State then pointed out that Belser was facing 210 to

280 months on an indeterminate sentence under the Indeterminate Sentence Review Board

(ISRB) for the second degree rape charge.

The trial court informed Belser that the charges were strike offenses under the persistent

offender statute and that if convicted of an additional strike offense, he could be sentenced to life

in prison without the possibility of release. The court also explained that if Belser was convicted

and was sentenced within the standard range, the ISRB could determine that he needed to remain

in custody for the remainder of his life.

---

[1] Belser apparently had been charged with similar crimes in King County and spent a year in custody before the King County charges were dismissed.

THE COURT: . . . [T]his is an ISRB case, you've had that explained to you?

DEFENDANT: Yes, sir.

THE COURT: So, you understand that even if you were convicted and the Court sentenced you to something within the standard range, this Review Board could determine you still need to remain in custody.

DEFENDANT: I, I understand that.

THE COURT: Potentially up to life.

DEFENDANT: Yes, sir.

RP at 34.

The court found that Belser's waiver of his right to counsel was knowing, intelligent, and voluntary and granted his motion to represent himself. Belser proceeded to trial with his former defense attorney as standby counsel.

All three victims testified as did their brother, who observed one of the sexual assaults. ZR testified that Belser sexually assaulted him between 2002 and 2006. JM testified that Belser sexually assaulted him between 2009 and 2011. GP testified that Belser instructed him to masturbate in front of Belser between 2003 and 2010. CP testified that he saw Belser fondling GP. Belser's defense at trial was that these reported events occurred outside the charging periods.

The jury found Besler guilty as charged, including the aggravating factors. The trial court imposed 230 months on count 1, 116 months on count 2, 60 months on counts 3, 4, and 5, and 120 months on count 6. The court ordered Belser to serve count 1 consecutively to counts 2-6, which constituted an exceptional sentence, with total confinement of 350 months.

Belser appeals his convictions and his exceptional sentence.

ANALYSIS

A.    WAIVER OF RIGHT TO COUNSEL

Belser argues that his waiver of his right to counsel was not knowing and intelligent because he was not aware of the nature and classification of the charged offenses, the maximum sentence that could be imposed upon conviction, and other sentencing consequences.  We disagree.

1.    Legal Principles

We review for abuse of discretion a trial court's determination that a defendant's waiver of the right to counsel is voluntary, knowing, and intelligent.  *State v. Howard*, 1 Wn. App. 2d 420, 425, 405 P.3d 1039 (2017).  An abuse of discretion occurs when the trial court's decision is manifestly unreasonable, is based on untenable grounds, or is based on an erroneous view of the law.  *Id.*   The defendant has the burden to show that his or her waiver of the right to counsel was not knowing and intelligent.  *Id.* at 426.

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to assistance of counsel.  A criminal defendant also has a right to self-representation under the same provisions.  *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).  The right of self-representation is "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice."  *Id.*

However, a tension exists between the rights of self-representation and to counsel. *Howard*, 1 Wn. App. 2d at 424.  By requesting to represent himself, a defendant waives his right to counsel.  *Id.* at 425.  Therefore, criminal defendants do not have an absolute right to self-

representation. *Id.* A trial court may allow a defendant to represent himself only if the defendant waives his right to counsel voluntarily, knowingly, and intelligently. *Id.* And a criminal defendant has a right to self-representation only if the right to counsel is properly waived. *Id.*

The trial court must indulge every reasonable presumption against waiver of the right to counsel. *Madsen*, 168 Wn.2d at 504. And the trial court may deny a request for self-representation if the request is "made without a general understanding of the consequences." *Id.* at 505.

The preferred method for determining whether waiver is valid is through a colloquy on the record between the trial court and the defendant. *Howard*, 1 Wn. App. 2d at 425. For the trial court's colloquy to be sufficient, this court has strictly adhered to certain requirements: " 'Th[e] colloquy, *at a minimum*, should consist of informing the defendant of the nature and classification of the charge, *the maximum penalty upon conviction* and that technical rules exist which will bind defendant in the presentation of his case.' " *Id.* at 426 (quoting *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984)). If the trial court does not address those issues in its colloquy, the record must otherwise show that the defendant was properly informed. *Howard*, 1 Wn. App. 2d at 428.

The maximum sentence for the charged crime is a particularly important consideration for self-representation.

> The maximum penalty for the charged crime is essential information that a defendant needs in deciding whether to represent himself or herself. A defendant may be willing to represent himself or herself when facing a lesser penalty but not when facing a greater penalty. Therefore, if a defendant does not know the maximum penalty for the charged crime, we cannot say that the defendant is making the decision to represent himself or herself knowingly.

5

*Id.* at 429. As a result, "a waiver of the right to counsel is invalid if the trial court does not inform the defendant of the maximum penalty for the charged crime and the defendant is not otherwise aware of the maximum penalty." *Id.*

2. Waiver Analysis

Belser claims that the trial court's colloquy was inadequate because the court did not inform him (1) of the nature and classification of the charged offenses, (2) the maximum sentence that could be imposed upon conviction, (3) that an indeterminate sentence was required for second degree child molestation, and (4) that there was a potential for an exceptional sentence based on the aggravating factor allegations. Although the trial court's colloquy could have been more detailed, the record shows that Belser received sufficient information to make his waiver of counsel knowing and intelligent.

First, the trial court did not expressly discuss with Belser the nature and classification of the charged offenses. The better practice would have been for the court to expressly do so for each charge. However, the court made it clear that this was a persistent offender case and that if Belser was convicted and then convicted of another strike offense, he could be sentenced to life imprisonment without the possibility of release. This informed Belser of the nature of at least some of his charges.

In addition, we can consider other parts of the record to determine if the defendant was properly informed. *See Howard*, 1 Wn. App. 2d at 428. Here, at his first appearance Belser was served with a copy of the information. The information detailed the charges against him and stated that three of the charges (counts 1, 2 and 6) involved "most serious offenses" pursuant to the Persistent Offender Accountability Act, RCW 9.94A.570. And defense counsel stated that

she had cautioned Belser about self-representation "especially based on the nature of the charges and seriousness of them." RP at 27.

The record is sufficient for us to conclude that Belser was informed of the nature and classification of the charged crimes.

Second, the trial court did not expressly discuss with Belser the maximum sentences for the charged offenses. The better practice would have been for the court to expressly do so for each charge. However, when the court started to inform Belser about the potential sentences for the charged offenses, defense counsel interrupted and stated that she had gone over the potential sentences with Belser multiple times and had discussed the issue with him at length. Counsel stated that Belser was "well aware" of the sentencing consequences. RP at 31. And the State noted that Belser could be sentenced to 210 to 280 months on an indeterminate sentence for the second degree rape charge.

In addition, the maximum sentence for count 1, as part of the indeterminate sentence, was life in prison. The trial court explained that Belser could remain in custody for life based on an ISRB determination. Therefore, Belser was aware that the maximum sentence he could receive as a result of the trial was life in prison. The record is sufficient for us to conclude that Belser was informed of his maximum sentence if he was convicted.

Third, the trial court did not expressly inform Belser that an indeterminate sentence was required for second degree child molestation. But as discussed above, the court did inform Belser that this was an ISRB case and that the ISRB could determine that he needed to remain in custody for the rest of his life. This discussion was sufficient to make Belser's waiver knowing and intelligent regarding this issue.

7

Fourth, the trial court did not expressly discuss with Belser the fact that the court could impose an exceptional sentence if he was convicted. However, the cases do not require that the trial court expressly address the possibility of an exceptional sentence. The requirement is that the defendant be informed of the maximum sentence. *Howard*, 1 Wn. App. 2d at 428-29. That maximum sentence necessarily would incorporate any exceptional sentence.

The record here establishes that Belser's waiver was knowing and intelligent. Accordingly, we hold that the trial court did not err in granting Belser's request to represent himself.

B.      COMMUNITY CUSTODY CONDITIONS

Belser argues that community conditions 4, 6, and 8 are improper and must be stricken. The State concedes on conditions 4 and 6 and concedes that condition 8 should be revised. We agree.

1.      Standard of Review

We review de novo the sentencing court's statutory authority to impose a particular community custody condition. *State v. Acevedo*, 159 Wn. App. 221, 231, 248 P.3d 526 (2010). However, we review a challenge that the condition is not crime-related for abuse of discretion. *State v. Nguyen*, 191 Wn.2d 671, 683-84, 425 P.3d 847 (2018).

If we determine that a sentencing court imposed an unauthorized condition on community custody, we remedy the error by remanding to the sentencing court with instruction to strike the unauthorized condition. *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008).

2.     Crime-Related Community Custody Conditions

Belser argues that the trial court imposed several community custody conditions that were not crime related.  To be crime related, there must be a reasonable relationship between the crime of conviction and the community custody condition.  *Nguyen*, 191 Wn.2d at 684.  "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.' "  *Nguyen*, 191 Wn.2d at 684 (quoting *State v. Irwin*, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)).

a.     Use and Possession of Marijuana

Condition 4 states, "No consumption or possession of marijuana." CP at 172.  Belser argues that condition 4 is improper because marijuana consumption and possession is not crime-related.  The State concedes that this prohibition is improper and we accept this concession because there was no evidence presented at trial that Belser used or possessed marijuana.  We remand for the trial court to strike this condition.

b.     Use of Electronic Media

Condition 6 states, "No unauthorized use of electronic media."  CP at 172.  Belser argues that condition 6 is improper because it infringes on core First Amendment rights.  The State concedes that this prohibition is improper and we accept this concession.  We remand for the trial court to strike this condition.

c.     Areas Where Minors Congregate

Condition 8 states, that Belser "[m]ay not enter into or frequent establishments or areas where minors congregate without being accompanied by a responsible adult approved by DOC [Department of Corrections] and sex offender treatment provider to include, but not limited to:

9

school grounds, malls, parks, or any other area designated by DOC." CP at 172. Belser argues that condition 8 is improper because it is vulnerable to arbitrary enforcement and thus is void for vagueness.

The State disagrees that this condition is void for vagueness but concedes that this condition needs revision. We agree and remand for the trial court to revise this condition.

C.      SAG CLAIMS

1.      Excusing Trial Witnesses

Belser asserts that the trial court erred in excusing ZR, JM, GP, and CP after they testified because he intended to call them as witnesses when he put on his evidence. He claims that their testimony would have corroborated his position and because they were unavailable, he was forced to testify on his own behalf.

However, Belser did not object when the court asked if the witnesses could be excused. The trial court explained that it had no authority to order them to appear but told Belser that he could subpoena them himself. It was Belser's own inaction that resulted in his witnesses being unavailable. Further, Belser stated throughout the proceedings that he intended to testify, so the record does not support his argument that he was forced to testify because these witnesses were unavailable. We reject this claim.

2.      Request for Training

Belser asserts that the trial court's denial of his motion to observe other trials denied him his right to competent representation. He claims that it was necessary for him to observe other trials because he would have been better able to represent himself.

The trial court offered Belser a CD of a trial but explained that the jail probably would not allow him to watch it for six or more hours at a time. The trial court then denied Belser's motion to observe a full trial because a trial could take several days and he would have to be accompanied by two deputies. We have found no authority that would require a trial court to allow a self-represented defendant to observe a trial to assist him in representing himself.

The court explained that one of the pitfalls of self-representation is the limitations placed on a defendant who is in custody. The trial court then offered to reappoint defense counsel, explaining that no lawyer without experience would handle a case of this nature. Belser did not respond to this offer. We conclude that the trial court did not err in denying Belser's motion to observe other trials.

3. Right of Privacy

Belser asserts that his right to privacy was violated regarding count 6 (sexual exploitation of a minor) because the charge related to a camping trip that he claims occurred when GP was16 years old, and 16 years olds have the right to engage in private sexual activity. Therefore, he claims that no crime was committed.

But there was conflicting evidence at trial as to GP's age at the time of the camping trip. JM, GP's brother, testified that he was 10 at the time of the camping trip. That means GP would have been 12 or 13 at that time. The jury found that GP was less than 16. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). We reject this claim.

### 4. Sexual Exploitation of a Minor

Belser asserts that the statute defining the crime of sexual exploitation of a minor is unconstitutionally vague. RCW 9.68A.040, as charged here provides:

> (1) A person is guilty of sexual exploitation of a minor if the person:
> . . . .
> (b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or

Belser claims that the use of "person" is vague because a person could be any age. He also claims that merely being present in a tent does not meet the definition of being an audience member for the performer's show.

But as applied to Belser, there is no uncertainty. He was the "person" referenced in the statute and he was an adult. RCW 9.68A.040 is not vague as applied to these circumstances. *See State v. Bohannon*, 62 Wn. App. 462, 468, 814 P.2d 694 (1991) (RCW 9.68A.040 not void for vagueness). We reject this claim.

### 5. Offender Score Calculation

Belser asserts that the offender score calculation of 9 for all his offenses creates an ex post facto violation because his offenses were committed in different years. He claims that his offender score for his earlier offenses (counts 1 and 2) should not have included his later offenses, which would have resulted in an offender score of 3 instead of 9 for those offenses and resulted in a standard range sentence of 102-136 months instead of 210 to 280 months. He employs the same logic to calculate reduced sentence ranges for his other convictions.

RCW 9.94A.589 states, "[w]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other

12

current and prior convictions as if they were prior convictions for the purpose of the offender score." RCW 9.94A.525(1) defines "current offenses" as "[c]onvictions entered or sentenced on the same date as the conviction for which the offender score is being computed."

Based on these statutes, the trial court properly calculated Belser's offender score as 9+. The statute specifically states that all of his convictions are current offenses. The statutes do not focus on when the offenses were committed but rather on when the convictions were entered.

But Belser claims that calculating his sentence in this manner constituted an ex post facto violation. "The ex post facto clauses of the state and federal constitutions prohibit the state from enacting any law which imposes punishment for an act which was not punishable when committed, or which increases the quantum of punishment for the offense after the crime was committed." *State v. Hennings*, 129 Wn.2d 512, 524-25, 919 P.2d 580 (1996) (citing U.S. Const. art. I, § 10; Wash. Const. art. I, § 23). In general, the Sentencing Reform Act of 1981 does not violate either the federal or Washington ex post facto provisions. *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 362-63, 759 P.2d 436 (1988).

Here, while Belser may have committed his offenses over a several year period, all of his *convictions* were in 2017. Under RCW 9.94A.525(1), all of these convictions constituted current offenses. And under RCW 9.94A.589, the offender score for each current offense must be determined by treating all other current convictions as if they were prior convictions.

Belser does not show that the legislature enacted any statute after he committed his count 1 and 2 offenses in 2003 that increased the punishment he faced for his crimes. To the contrary, the statutory provisions governing the calculation of offender scores were the same as those used in 2003. We reject Belser's ex post facto claim.

6.    Venue for Third Degree Child Molestation Charge

Belser was convicted of third degree child molestation regarding ZR (Count 3).  He asserts that this offense must have occurred in Snohomish County rather than in Clark County and therefore he was not tried in the county in which he committed the offense as guaranteed by article I, section 22 of the Washington Constitution.

Third degree child molestation involves an adult's "sexual contact with another who is at least fourteen years old but less than sixteen years old."  RCW 9A.44.089.  ZR turned 14 years old in January 2004.  But Belser points to evidence that he changed his name in February 2004 in Snohomish County and notes that the State argues that Belser must have moved to Snohomish County before that time.  Therefore, Belser argues that it was unlikely that he could have molested ZR in Clark County while ZR was 14.

However, Belser testified that he moved to Marysville in *September* 2004.  The jury could have believed that testimony.  If that was true, Belser could have molested ZR in Clark County between January 2004 and September 2004, when ZR still was 14.  And Belser testified that he molested ZR when ZR was 14.  Again, credibility determinations are made by the trier of fact and are not subject to review.  *Miller*, 179 Wn. App. at 105.  We reject this claim.

CONCLUSION

We affirm Belser's convictions of second degree child rape, second degree child molestation, two counts of third degree child molestation, third degree child rape, and sexual exploitation of a minor.  We also affirm the length of Belser's sentence, but we remand for the trial court to strike sentencing conditions 4 and 6 and to revise sentencing condition 8.

14

No. 50899-1-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____

MAXA, C.J.

We concur:

_____

WORSWICK, J.

_____

GLASGOW, J.