# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>MARCUS CARRILLO,<br><br>   Petitioner. | No. 80793-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Carrillo petitioned for relief from several community custody conditions imposed after pleading guilty to two sex offenses. The conditions overseeing Carrillo's dating and sexual relationships, prohibiting him from possessing sexually explicit materials, visiting sex-related businesses, and frequenting areas where children's activities regularly occur are constitutional and crime related. However, the two Internet related conditions are vague, overbroad, and allow for suspicionless searches. We grant his petition as to those conditions only, and we remand to strike or revise those conditions.

## FACTS

In April 2017, Marcus Carrillo pleaded guilty to two felonies—rape of a child in the 3rd degree and sexual exploitation of a minor.[1] Carrillo's statement on the felony plea acknowledges that he had sexual intercourse with 15 year old A.U. He also engaged in sexually explicit conduct "knowing that the conduct would be

---

[1] Carrillo also pleaded guilty to the gross misdemeanor offense of communication with a minor for immoral purposes. He has not challenged the gross misdemeanor judgment and sentence.

photographed when I filmed her having sexual intercourse with me on my cellphone when she was under 18 years of age."

The stipulated facts provide more detail. Carrillo met A.U. at the fast food restaurant where he worked and eventually she gave him her Snapchat[2] account name and cellphone number so they could communicate. Carrillo and A.U. had a sexual encounter in a nearby park. They talked on FaceTime[3] that evening and discussed the encounter. Carrillo sent A.U. a Snapchat message requesting she meet him at the restaurant one evening. While at the restaurant, Carrillo and A.U. had additional sexual encounters, one of which Carrillo videotaped with his cellphone. Soon after, A.U. contacted the police.

Carrillo received a total standard range sentence of 58 months of confinement. The court also sentenced him to 36 months of community custody with special community custody conditions for sex offenders. Carrillo filed an untimely motion to modify the judgment to remove several community custody conditions. The trial court transferred the motion to this court for consideration as a personal restraint petition (PRP).

DISCUSSION

Relief will be granted on a PRP when the petitioner demonstrates either a constitutional error that resulted in actual and substantial prejudice or a nonconstitutional error that resulted in a fundamental defect that caused a

---

[2] "Snapchat" is a cell phone app similar to text messaging except that photos and texts sent through Snapchat disappear once they are seen by the recipient and are not preserved.

[3] "FaceTime" is Apple Inc.'s video communication software.

complete miscarriage of justice. In re Pers. Restraint of Brettell, 6 Wn. App. 2d 161, 166-67, 430 P.3d 677 (2018). Generally, a PRP is time barred when filed more than one year after the mandate issues unless subject to an exception in RCW 10.73.100. In re Pers. Restraint of Haghighi, 178 Wn.2d 435, 445, 309 P.3d 459 (2013); RCW 10.73.090. The petitioner has the burden to show that an exception applies. In re Pers. Restraint of Fuamaila, 131 Wn. App. 908, 918, 131 P.3d 318 (2006). One exception applies to sentences imposed in excess of the court's jurisdiction. RCW 10.73.090(5).

Carrillo challenges the imposition of six community custody conditions. Appellate courts review community custody conditions for abuse of discretion and will reverse a manifestly unreasonable condition. Brettell, 6 Wn. App. 2d at 167. "A trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition, and we review constitutional questions de novo." State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). We do not presume that a community custody condition is constitutional. Brettell, 6 Wn. App. 2d at 167.

I.   Condition 5 – Oversight of Dating Relationships

Condition 5 restricts Carrillo's ability to date during his time in community custody:

> 5. Inform the supervising CCO [(Community Corrections Officer)] and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such.

3

Carrillo alleges this condition is unconstitutionally vague, not crime related, and a violation of his freedom of association.

A. Vagueness

According to Carrillo, this community custody provision "fails to identify which 'treatment provider' must give approval and fails to identify the types of 'relationship' to which this applies." This argument has no merit.

A community custody condition is unconstitutionally vague if "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). When considering the meaning of a community custody condition, "the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." State v. Bahl, 164 Wn.2d 739, 754, 193 P.3d 678 (2008). "[D]isputed terms are considered in the context in which they are used, and '[i]f persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite.'" State v. Nguyen, 191 Wn.2d 671, 679, 425 P.3d 847 (2018) (most alterations in original) (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)). A community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the point at which the actions would be classified as prohibited. Id.

Carrillo claims the sentence "[s]exual contact in a relationship is prohibited until the treatment provider approves of such" does not sufficiently describe the

type of relationship prohibited and leaves too much discretion to treatment providers to limit his relationships. In making this argument, Carrillo ignores the context of that sentence. The disputed language is part of one condition composed of three sentences. The sentences of the condition are formatted together in a single numbered paragraph. They are clearly meant to be read and construed as a whole. The condition references only one type of treatment provider—the sexual deviancy treatment provider. In the context of condition 5, "[s]exual contact in a relationship is prohibited until the treatment provider approves of such" logically refers to dating relationships and the sexual deviancy treatment provider.

Interpreting the condition to require prior approval by the sexual deviancy treatment provider for sexual contact in a dating relationship provides fair warning of the proscribed conduct. Carrillo's judgment and sentence requires he obtain a sexual deviancy evaluation and comply with any treatment recommendations. The Washington Supreme Court has already concluded that "a person of ordinary intelligence can distinguish a 'dating relationship' from other types of relationships." Id. at 682. Additionally, RCW 26.50.010(2) defines "dating relationship" as "a social relationship of a romantic nature."

Within this context, condition 5 sufficiently defines the proscribed conduct and provides ascertainable standards to protect against arbitrary enforcement. The condition is not unconstitutionally vague.

B. Crime Related

Carrillo also argues the dating prohibition is not crime related because it applies to consensual sexual contact with an adult while he committed his offenses

5

against a minor. The State claims this community custody condition relates to the crimes and protects the public.

A sentencing court has the discretion to impose crime related prohibitions as a condition of community custody. See RCW 9.94A.703(3)(f). A "crime related prohibition" means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted. RCW 9.94A.030(10). A "reasonable relationship" must exist between the crime of conviction and the community custody condition. Nguyen, 191 Wn.2d at 684. The prohibited conduct need not be identical but must have some basis for the connection to the crime of conviction. Id. We review community custody conditions for abuse of discretion. Id. at 683.

Washington courts have considered whether dating prohibitions are crime related community custody conditions for sex offenders and have approved them. In State v. Autrey, the defendant sexually assaulted a minor and the court imposed the requirement that he obtain permission of the therapist before sexual contact. 136 Wn. App. 460, 465, 150 P.3d 580 (2006). This condition was not an abuse of discretion because "the offender's freedom of choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors." Id. at 468.

In re Personal Restraint of Sickels considered the exact condition at issue in this case. 14 Wn. App. 2d 51, 60, 469 P.3d 322 (2020). The court noted that the first two sentences of the condition, requiring the offender to inform the CCO and sexual deviancy therapist of dating relationships and disclose sex offender

6

status before sexual contact, are not prohibitions imposed under RCW 9.94A.703(3)(f). Id. Instead, the condition establishes "affirmative conduct" under RCW 9.94A.703(3)(d) that must be "'reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community.'" Id. (quoting RCW 9.94A.703(3)(d)). The court concluded these conditions were related to the safety of the community in that they protect the individuals the offender might date. Sickels, 14 Wn. App. 2d at 60-61.

The last sentence of the condition, prohibiting sexual contact without approval, is a crime related condition under RCW 9.94A.703(3)(d) and (f). Id. Where, as here, "the condition is imposed on a sex offender along with a requirement for early evaluation it is crime related." Id. at 63. The court ordered Carrillo to undergo a sexual deviancy evaluation and comply with all recommended treatment. As a result, the condition "requires that he not have sexual contact 'until' his treatment provider is satisfied that sexual contact does not put others at risk. It is not a total ban on protected activity and can be challenged as applied in the event the treatment provider's approval is exercised unreasonably." Id. at 62-63.

Carrillo engaged in inappropriate sexual contact with a minor as part of a sexual relationship. Requiring notification to the CCO and treatment provider to date and requiring the treatment provider to approve sexual contact relates directly to the crimes of conviction.

Condition 5 is reasonably crime related.

C. Freedom of Association

Carrillo argues the dating prohibitions infringe on his constitutional right to free association.

The First Amendment protects freedom of association. U.S. CONST. amend. I; State v. Moultrie, 143 Wn. App. 387, 399, 177 P.3d 776 (2008). While in community custody, an offender's constitutional rights are subject to infringement as authorized by the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. Id. at 396. This includes the restrictions on contact with the victim of the crime or a specific class of individuals. RCW 9.94A.703(3)(b). A court may restrict an offender's freedom of association as a condition of sentencing if reasonably necessary to accomplish essential needs of the state and public order. State v. Riley, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993). Such limitations are permissible if they are sensitively imposed. Id. at 37.

As discussed above, the dating community custody conditions protect the individuals Carrillo might seek to date or engage with in sexual activity. The protections relate directly to Carrillo's offenses committed in the context of his sexual relationship with A.U. Moreover, Carrillo is not prohibited from dating or sexual encounters. Rather, he must receive approval and disclose his offender status in order to reduce the possibility of reoffending. The dating limitations are sensitively imposed to protect others and minimize the likelihood that Carrillo will commit similar sex offenses.

Condition 5 does not violate Carrillo's freedom of association.

II.    Conditions 9 and 10 - Sex-related Businesses and Sexually Explicit Material

Carrillo claims that two conditions related to sexually explicit

material are not crime related.[4]

> 9. Do not enter sex-related businesses, including: x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material.

> 10. Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.

The Washington State Supreme Court has considered both of these

conditions and concluded they were crime related.  See Nguyen, 191 Wn.2d at

683-87.  The prohibitions on sexually explicit materials and frequenting sex-related

businesses relate to "the inability to control [ ] sexual urges."  Id. at 687.  As the

court noted, "[i]t is both logical and reasonable to conclude that a convicted person

who cannot suppress sexual urges should be prohibited from accessing 'sexually

explicit materials,' the only purpose of which is to invoke sexual stimulation."  Id.

at 686.  Eliminating access to both sexually explicit materials and sex-related

businesses attempts to "prohibit conduct that might cause the convict to reoffend."

Id. at 687.

Carrillo had sexual encounters with his underage victim.  He used his

cellphone to videotape one of the sex acts, essentially creating his own sexually

---

[4] Carrillo alleges the conditions infringe on his First Amendment rights but makes no legal argument on this issue.  Nonetheless, these conditions survive a constitutional vagueness challenge even under the heightened standard of the First Amendment.  See Nguyen, 191 Wn.2d at 679-80.

9

explicit material for subsequent viewing. Carrillo admitted that he needed help because he was "sick" and "did not know why he liked the things that he did."

The prohibitions against sexually explicit material and frequenting sex-related businesses are sufficiently crime related and the court did not abuse its discretion in imposing them.

III.  Condition 18 - Areas of Children's Activities

Community custody condition 18 prohibits Carrillo from visiting areas where minors are often present.

> Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC [(Department of Corrections)] or the CCO.

Carrillo argues condition 18 is unconstitutionally vague because it fails to provide sufficient notice of areas he should avoid and allows for arbitrary enforcement.

As discussed above, a community custody condition is unconstitutionally vague if "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." Padilla, 190 Wn.2d at 677.

Washington courts have upheld community custody conditions that prohibit an offender from entering areas frequented by minors. See Wallmuller, 194 Wn.2d at 245; Sickels, 14 Wn. App. 2d. at 66-67. In Wallmuller, the condition required, "'[D]efendant shall not loiter in nor frequent places where children congregate such

10

as parks, video arcades, campgrounds, and shopping malls." Wallmuller, 194 Wn.2d at 237. The court noted that "'where children . . . congregate'" is vague on its own, but the phrase is "sufficiently specific when modified by a nonexclusive list of places illustrating its scope." Id. at 243-44. According to the court, the condition with its nonexclusive list, "puts an ordinary person on notice that they must avoid places where one can expect to encounter children, and it does not invite arbitrary enforcement." Wallmuller, 194 Wn.2d at 245.

Carrillo contends the condition in this case differs from Wallmuller because "[i]t lists places to avoid but does not purport to limit its scope to places 'where children congregate.'" He claims this omission presents a vagueness problem because several places listed in the condition do not put a reasonable person on notice of what is to be avoided. This argument lacks merit. "Stay out of areas where children's activities regularly occur or are occurring," followed by a nonexclusive list of locations provides the same level of clarity as the provision in Wallmuller and "puts an ordinary person on notice that they must avoid places where one can expect to encounter children." Id. at 245.

Recently, we considered the same condition and determined the provision minimized the possibility of arbitrary enforcement. See Sickels, 14 Wn. App. 2d at 66-67. The command to "[s]tay out of areas where children's activities regularly occur or are occurring . . . places a burden on DOC or the CCO to affirmatively identify locations they deem to be prohibited by the command." Id. As a result, the offender no longer has "the burden and risk of self-identifying locations he might fear are prohibited." Id. at 67.

11

Condition 18 is not unconstitutionally vague.

IV.    Conditions 23 and 24 - Internet Regulation

Finally, Carrillo challenges two community custody conditions that restrict his Internet usage.

> 23. [X] No [I]nternet access or use, including e[-]mail, without the prior approval of the supervising CCO.

> 24. [X] No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches). The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

Carrillo contends these conditions are not crime related and unconstitutional because they are vague, overbroad, and allow suspicionless searches.

A. Crime Related

Carrillo argues the Internet prohibitions are not crime related because there is no evidence he used the Internet in connection with his felony offenses. This misstates the record. Carrillo relied on Internet applications Snapchat and FaceTime to contact A.U. to arrange encounters and discuss their sexual activities. He also used his cellphone to video record their sexual activity. Where an offender used social media to contact his victim, conditions restricting Internet access are crime related. State v. Magana, 197 Wn. App. 189, 201, 389 P.3d 654 (2016).

A reasonable relationship exists between the crimes of conviction and the community custody condition. Nguyen, 191 Wn.2d at 684.

B. <u>Vagueness</u>

Carrillo argues the two Internet prohibitions fail the vagueness test because they allow arbitrary enforcement.

A community custody condition is unconstitutionally vague when "it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." <u>Padilla</u>, 190 Wn.2d at 677. Courts have held community custody conditions requiring further definition from a CCO to be unconstitutionally vague. <u>State v. Irwin</u>, 191 Wn. App. 644, 654, 364 P.3d 830 (2015). For example, in <u>Bahl</u>, the condition prohibiting access to or possession of pornographic materials "as directed by the supervising Community Corrections Officer" did not adequately protect against arbitrary enforcement. 164 Wn.2d at 754, 758. The fact that the condition allowed the CCO to direct what falls within the condition "only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." <u>Id.</u> at 758; <u>see State v. Sansone</u>, 127 Wn. App. 630, 639, 111 P.3d 1251 (2005). Similarly, this court struck a community custody condition that prohibited an offender from frequenting areas where minor children are known to congregate as defined by the CCO. <u>Irwin</u>, 191 Wn. App. at 654-55. Allowing the CCO to establish the locations left the condition vulnerable to arbitrary enforcement. <u>Id.</u> at 655.

Here, the trial court ordered "[n]o [I]nternet access or use, including e[-]mail, without the prior approval of the supervising CCO." The trial court gave the CCO complete control of Carrillo's Internet access, opening the door to arbitrary

13

enforcement based on the CCO's individual determinations. Without ascertainable standards of enforcement, the condition is unconstitutionally vague.

C. Overbreadth

Carrillo also argues conditions 23 and 24 are overbroad.[5]

Overbreadth "goes to the question of whether State action is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." Sickels, 14 Wn. App. 2d at 67. The mere fact that a community custody condition impinges on a constitutional right does not invalidate it. Id. at 69. Such limitations on fundamental rights are permissible if they are sensitively imposed. State v. Johnson, 197 Wn.2d 740, 744, 487 P.3d 893 (2021).

The United States Supreme Court has emphasized the importance of the Internet, noting that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." Packingham v. North Carolina, __ U.S. __, 137 S. Ct. 1730, 1737, 198 L. Ed. 2d 273 (2017). But, "it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." Id. Judges may restrict a defendant's access to the Internet if those restrictions are "narrowly tailored to the dangers posed by the specific defendant." Johnson, 197 Wn.2d at 745.

―――――――――

[5] The State does not argue that Carrillo's claim is not ripe for preenforcement review.

The Washington Supreme Court recently approved of a community custody condition that the offender shall "not use or access the World Wide Web unless specifically authorized by [his community custody officer] through approved filters." Johnson, 197 Wn.2d at 744 (alteration in original). In Johnson, the court concluded "that any danger of arbitrary enforcement is constrained by other documents related to" the convictions. Id. at 749. According to the court,

> the crimes themselves and the statement of probable cause provide sufficient direction to prevent arbitrary enforcement. The statement of probable cause contains a detailed recitation of the facts that led up to Johnson's arrest, including the role Johnson's Internet use played. When read in conjunction with this condition of community custody, these documents provide meaningful benchmarks to restrict arbitrary enforcement. Fairly read in the context of Johnson's crimes, he should not be allowed to use the Internet to solicit commercial sex or sex with children. An appropriate filter should be selected with this in mind.

Id.

Conditions 23 and 24 are not narrowly tailored like those in Johnson. They do not limit the restrictions to the particular dangers posed by Carrillo, namely his ability to contact minors. Between the two provisions, Carrillo cannot use the Internet without permission from his CCO and cannot use an Internet-enabled device except for employment related purposes. The conditions essentially eliminate all recreational use of the Internet without CCO permission. They also impinge on Carrillo's ability to own smart devices or have and use cellphones for routine communication with family and friends. These conditions "sweep[ ] constitutionally protected free speech activities within [their] prohibitions" and are,

15

therefore, overbroad. City of Seattle v. Abercrombie, 85 Wn. App. 393, 397, 945 P.2d 1132 (1997).

Conditions 23 and 24 violate Carrillo's First Amendment rights.

D. Suspicionless Search

Condition 24 also allows [t]he CCO "to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition." Carrillo claims it allows for suspicionless searches in violation of the Washington Constitution, article 1, § 7 and the Fourth Amendment.

Article 1, § 7 of the Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This robust privacy right is more protective than the Fourth Amendment and we turn to it first when both provisions are at issue. State v. Byrd, 178 Wn.2d 611, 616, 310 P.3d 793 (2013). Even under Article 1, a person under community supervision has a lesser expectation of privacy "and may be searched on the basis of a well-founded or reasonable suspicion of a probation violation." State v. Winterstein, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). The SRA allows for a warrantless search of an offender's person, residence, and personal property "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence." RCW 9.94A.631(1). But, an "[i]ndividual['s] privacy interest can be reduced 'only to the extent necessitated by the legitimate demands of the operation of the [community supervision] process.'" State v. Cornwell, 190 Wn.2d 296, 303-04, 412 P.3d 1265 (2018) (last alteration in original) (internal

quotation marks omitted) (quoting <u>State v. Olsen</u>, 189 Wn.2d 118, 125, 399 P.3d 1141 (2017)).

Here, the provision allows for the CCO to search Carrillo's private property randomly and at any time, regardless of reasonable cause.  Moreover, the expansive search power arises in a constitutionally overbroad community custody condition.  It is not "narrowly tailored to monitor compliance with a validly imposed probation condition." <u>Olsen</u>, 189 Wn.2d at 126.

Condition 24 is unconstitutional for this reason as well.

The petition is granted solely as to the Internet prohibitions—conditions 23 and 24.  We remand to strike or revise these conditions.

_Appelwick, J._

WE CONCUR:

_Andrus, A.C.J._        _Mann, C.J._